******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CHARLOTTE MALPESO *v.* PASQUALE MALPESO
(AC 36622)
(AC 37203)

DiPentima, C. J., and Beach and Sheldon, Js.

*Argued December 14, 2015—officially released May 3, 2016*

(Appeal from Superior Court, judicial district of Stamford-Norwalk, Schofield, J.)

*Barbara M. Schellenberg*, with whom were *Richard L. Albrecht* and, on the brief, *Bruce L. Levin*, for the appellant-appellee (defendant).

*Kevin F. Collins*, for the appellee-appellant (plaintiff).

*Opinion*

DiPENTIMA, C. J. In this postdissolution marital matter, the defendant, Pasquale Malpeso, appeals from the judgment of the trial court. Although the court granted his motion to modify the original unallocated alimony and child support that was entered as part of the parties' judgment of dissolution, the defendant contends that the court (1) applied the wrong legal standard in calculating the child support component of the unallocated alimony and child support order, (2) determined the wrong effective date of the modification, (3) erroneously concluded that a lien could be placed on the defendant's assets for him to pay his alimony obligation, and (4) incorrectly stated that it lacked jurisdiction to terminate his obligation to pay alimony. The defendant further claims that the trial court abused its discretion in finding him in contempt and ordering him to pay the plaintiff's counsel fees and costs.[1] We reverse, in part, and affirm, in part, the judgment of the trial court.[2]

We set forth the following facts and procedural history pertinent to this appeal. The plaintiff, Charlotte Malpeso, married the defendant on August 23, 1986. On June 25, 2004, the marriage was dissolved. At that time, the parties had three minor children: a son, born in 1988; and twin daughters, born in 1993. The judgment of dissolution incorporated the parties' separation agreement (agreement) that provided, inter alia, that the defendant would pay the plaintiff $20,000 per month in unallocated alimony and child support.[3] The agreement also contained a clause limiting the circumstances in which the amount and term of alimony could be modified.[4] The judgment of dissolution was opened and modified once in December, 2005, to allow the defendant to purchase certain property from the plaintiff.

The complicated procedural history of this case began on May 25, 2011, when the defendant filed a motion to modify child support. In response, on June 17, 2011, the plaintiff filed an objection to the defendant's motion. In August, 2011, the defendant amended his motion not only to modify child support, but also to modify alimony based on the following grounds: (1) the parties' daughters had reached the age of majority and had graduated from high school; and (2) the economy of New York had undergone a substantial change as a result of a catastrophic event. The court, *Wenzel, J.*, ruled that the only permissible ground for modification, pursuant to paragraph 3.2 of the agreement, was the claim alleging a substantial change in the economy of New York. The court sustained the plaintiff's objection to the motion on all other grounds upon which it was based. The defendant appealed from that ruling on September 6, 2011.

While the appeal was pending, the parties' litigation

continued in the trial court. The seeds of this appeal were sown on September 13, 2011, when the defendant filed a motion for contempt, alleging that the plaintiff had "refuse[d] to provide reasonable support to and for the parties' children for support expenses such as clothing, necessities . . . personal transportation . . . grooming, etc." Four months later, on January 25, 2012, the defendant filed another motion to modify alimony and child support. The second motion to modify was based on three grounds: (1) the parties' three children had reached the age of majority and were no longer residing with the plaintiff; (2) the defendant was paying for the adult children's college expenses;[5] and (3) the defendant was experiencing a "downturn in [his] financial circumstances."[6] The defendant asked the court, on those grounds, either to reduce or to terminate his financial "obligations to the plaintiff . . . ." The plaintiff was served with the second motion to modify on February 9, 2012. The plaintiff objected to this motion and, on June 14, 2012, filed a motion for contempt, alleging, inter alia, that the defendant was nine months (October, 2011 through June, 2012) in arrears in making his $20,000 monthly payments.

The court, *Schofield, J.*, held multiple hearings between October and December of 2012 to resolve the following motions: (1) the defendant's motion for contempt filed on September 13, 2011; (2) the defendant's motion to modify alimony and child support filed on January 25, 2012; and (3) the plaintiff's motion for contempt filed on June 14, 2012. Before Judge Schofield ruled on the motions, this court published its decision reversing Judge Wenzel's ruling.[7] In that year, following this court's decision, the court, *Schofield, J.*, issued three decisions addressing these motions.

With respect to the first decision, the court's first memorandum of decision was issued on July 16, 2013, addressing all three motions before the court. In that decision, the court made the following findings: (1) the parties' three children had reached the age of majority; (2) the children were no longer living with either parent; (3) the defendant, pursuant to the agreement, was paying for the three children's college expenses; and (4) the alleged downturn in the defendant's "financial circumstances [was] speculative, and uncorroborated, indeed contradicted, by [the evidence presented]." As to the third finding, the court credited the defendant's testimony that when he started paying for the children's college expenses, he believed that the amount of his unallocated alimony and support payment would be reduced. Nonetheless, the court noted that the agreement did not provide for such a reduction; thus, it ruled that the defendant could not "now claim that the costs of college expenses are a basis for modification." The court, however, also inserted a footnote stating that, "[u]nless, of course, those college expenses substantially changed [the defendant's] financial cir-

cumstances."

The court granted the defendant's second motion to modify alimony and child support that had been filed on January 25, 2012. Specifically, because "the children of the marriage [had] reached the age of majority," the court applied the child support and arrearage guidelines (guidelines), without specifying the effective year of those guidelines, to fashion a new financial order. Also, by apparently, but not explicitly, relying on the parties' current financial affidavits, the court calculated the parties' combined net weekly income to be $16,850, which, pursuant to the undated guidelines and a "declining factor, given the income of the parties," resulted in a presumptive child support amount of $8862 per month. Accordingly, the court converted the unallocated alimony and child support into a periodic alimony order in the amount of $12,000 per month, which was reached by reducing the defendant's $20,000 monthly obligation by $8000.[8] The modified alimony order was to become effective on July 16, 2013, the date of the court's decision.

As to the parties' respective motions for contempt, the court ruled in favor of the plaintiff on each. On the defendant's motion for contempt, it found that the plaintiff was not in contempt. On the plaintiff's motion, it found that the defendant was "in wilful and intentional violation of the court orders." Upon finding the defendant in contempt, the court ordered him to pay the plaintiff $440,000 in arrears for failing to meet his $20,000 per month obligation for the twenty-two months from October, 2011, through July, 2013. Additionally, the court ordered the defendant to pay the plaintiff's attorney's fees and costs, totaling $41,016.18. In response to this decision, both parties filed several motions. The plaintiff filed a "motion to clarify and/or articulate" and a "motion to reopen and reargue decision." The defendant also filed a motion to reargue.

With respect to the second decision, after the court held a hearing on the plaintiff's motion to clarify and/or articulate and the defendant's motion to reargue in October, 2013, it issued its second memorandum of decision on February 18, 2014. The court clarified its prior calculation of the presumptive child support amount, explaining that because the parties' combined net weekly income was $17,039.30[9] and applying the guidelines with "a presumptive declining factor," the resulting presumptive child support amount for three children was $2061 per week ($687 per child) or $8862 per month.[10] Accordingly, the court ordered the "unallocated alimony to be reduced by the sum of $2061 per week retroactive to the [date of] service of the motion for modification." In other words, the court reduced the defendant's monthly financial obligation to the plaintiff from $20,000 to $11,138 per month, retroactive to the date of service.[11] Then the court stated to the contrary

without further elaboration: "In its [July, 2013 memorandum of decision], the court incorrectly declined to award retroactivity to the date of majority. The court now corrects that error." The court did not specify which date of majority it intended to use, i.e., the date of majority of the son or that of the daughters.

The court's second memorandum of decision also explained other aspects of its first order. Pertinent to this appeal, the court changed its stance on the issue of college expenses. The court, "upon review of the [agreement] and its provisions for modification," concluded that college expenses could be a "basis for modification." Therefore, the court concluded that $32,000 per month of college expenses constituted "a substantial change in circumstances justifying a reexamination of the parties' financial circumstances pursuant to [General Statutes § 46b-82] and *Borkowski* v. *Borkowski*, 228 Conn. 729, 739, 638 A.2d 1060 (1994)." The court, then, concluded that "alimony payments should not terminate [but will] . . . be adjusted by a reduction in child support." The court iterated that the defendant's monthly financial obligation to the plaintiff would be set at $11,138 per month. See footnote 11 of this opinion.

The court also addressed its previous contempt order. It asserted that the defendant was in contempt but adjusted its previous ruling as follows: "[T]he court orders that the arrearage which must be recalculated to reflect the current arrearage accruing since December, 2012, as modified with retroactivity." The court did not elaborate any further, but it did affirm its previous order that the defendant pay the plaintiff's attorney's fees and costs. In response to the court's second memorandum of decision, the plaintiff filed a motion to reopen, clarify and reargue, to which the defendant objected.

With respect to the third decision, on August 29, 2014, after a hearing, the court issued a third memorandum on the plaintiff's motion to reopen. The court again attempted therein to clarify how it had calculated the presumptive child support amount. The court determined that because the parties' combined net weekly income was approximately $16,900, the presumptive child support amount was $2600 per week pursuant to the guidelines effective August 1, 2005, as well as General Statutes § 46b-84 (d).[12] The court also articulated that it "had not consider[ed] college expenses as a basis for modification." The court declined to articulate further as to the retroactivity of the modification order.

Finally, the court made two observations directed at the defendant's previous arguments. First, the court rejected the defendant's argument regarding the termination of the alimony award because the agreement limited the modification of alimony to specific events, and the court had no jurisdiction to terminate the alimony. Second, the court again stated that it did not consider college expenses because the defendant was

obligated contractually to pay for those expenses. It did, however, reiterate that "if the college expenses significantly altered [the defendant's] finances, that might be a basis for modification."

Faced with this difficult record, we briefly review the findings and conclusions that appear to be before us in this appeal. The court modified the $20,000 per month unallocated alimony and support order to a periodic alimony order of $11,138 per month. It is also clear that the court attempted to fashion this alimony order in its second memorandum of decision by calculating the presumptive child support amount attributable to the unallocated alimony and support order, and deducting that figure ($8862 per month) from $20,000. The court arrived at the child support figure by reviewing the parties' current financial affidavits, as presented at the 2012 hearings, and determining the parties' combined net weekly income, then applying the 2005 guidelines with respect to three children and the statutory factors listed in § 46b-84 (d). Although the court acknowledged that the obligation to pay college expenses constituted a substantial change in the defendant's circumstances, it did not consider his obligation to pay college expenses as a basis for modification of alimony. Therefore, the court justified its alimony order by analyzing the parties' financial circumstances in light of the factors listed in § 46b-82 as well as *Borkowski* v. *Borkowski*, supra, 228 Conn. 729.

What is less clear is the effective date of the modification order and the amount of the arrearage owed to the plaintiff as a result of the contempt finding. The second memorandum of decision contains conflicting language as to the retroactivity of the newly fashioned alimony order, and the court declined to articulate its order. Moreover, although the court explicitly stated in its second memorandum of decision that the arrearage "must be recalculated," it did not do so.

On March 10, 2014, the defendant filed this appeal, which he later amended on September 16, 2014. The plaintiff also filed an appeal on September 16, 2014. See footnote 1 of this opinion. Additional facts will be set forth as necessary.

I

The defendant's first claim is that the court applied the wrong legal standard in calculating what portion of the original unallocated alimony and child support order was child support. He makes two arguments to support this claim. First, the defendant contends that the court failed to apply the methodology for determining the child support portion of an unallocated alimony and child support order, as articulated in *Tomlinson* v. *Tomlinson*, 305 Conn. 539, 46 A.3d 112 (2012); specifically, the court erroneously used the parties' current net weekly incomes to calculate the child support amount.

Second, he asserts that the court should have determined the intent of the parties rather than applying the guidelines to determine the amount of child support. Thus, the defendant contends, the entire modification order must be reversed. We agree that the court applied the wrong legal standard.

The following additional facts are required. The court at the original dissolution proceeding in 2004, *Hon. Dennis F. Harrigan*, judge trial referee, found the agreement between the parties to be fair and equitable. It incorporated the terms of the agreement into the dissolution decree, noting that "the income of the [d]efendant exceeds the maximum under the guidelines schedule, [and] [t]he parties have reached an agreement as to [child support] in their [a]greement."

At the November 16, 2012 hearing, the defendant testified to his interpretation of the unallocated alimony and child support award. Specifically, he testified that the $20,000 obligation was meant to be equally divided among the three children and the plaintiff, i.e., $5000 per person per month. The defendant also stated that although he agreed to pay for the children's college expenses, he also assumed that the "$5000 per child would be eliminated" once the child was in college. Moreover, he asserted that he would not have signed the agreement if he "would be paying the [children's] college education and continue paying $20,000 a month [in] alimony for the rest of [his] life."

The defendant makes two arguments to support this claim. First, he claims that the court improperly used the parties' current financial affidavits. Second, he claims that the court should have credited the defendant's testimony as to the parties' intent regarding how the $20,000 was meant to be divided. The second argument is based on the defendant's reading of the original dissolution decree in which Judge Harrigan not only found that this was a case of a high income parent whose net weekly income went beyond the guidelines, but also that the parties had reached an agreement as to child support. Thus, the defendant contends, the court never should have applied the guidelines when deciding the motion to modify. As to the defendant's first argument, we agree. We reject the defendant's second argument.

We begin by setting forth the relevant standard of review and legal principles. The defendant asserts that the court applied the wrong legal standard in calculating the child support amount and that the court, rather than applying the guidelines, should only have determined the intent of the parties to ascertain the amount of child support in the unallocated alimony and child support order. Because the defendant raises a question of law in both issues and we must interpret existing statutes and regulations,[13] we apply plenary review. See *Tuckman* v. *Tuckman*, 308 Conn. 194, 200, 61 A.3d 449 (2013)

("[t]he question of whether, and to what extent, the child support guidelines apply . . . is a question of law over which this court should exercise plenary review" [internal quotation marks omitted]); *Coury* v. *Coury*, 161 Conn. App. 271, 293, 128 A.3d 517 (2015) ("[o]ur deferential standard of review [in domestic relations cases] . . . does not extend to the court's interpretation of and application of the law to the facts [thus, we apply] . . . plenary review on appeal" [internal quotation marks omitted]).

In cases such as this one, where the parties incorporate the child support into an unallocated alimony and child support order that limits the modification of the alimony pursuant to an agreement, modification requires additional considerations. Because "an unallocated order incorporates alimony and child support without delineating specific amounts for each component, the unallocated order, along with other financial orders, necessarily includes a portion attributable to child support in an amount sufficient to satisfy the guidelines." *Tomlinson* v. *Tomlinson*, supra, 305 Conn. 558. Thus, to decide a motion to modify in this situation, "a trial court must determine what part of the original decree constituted modifiable child support and what part constituted nonmodifiable alimony." Id.

When a court unbundles child support from an unallocated alimony and child support order, the guidelines continue to provide guidance.[14] See id. Even in cases of high income parents, adherence to principles of the guidelines is mandatory. See *O'Brien* v. *O'Brien*, 138 Conn. App. 544, 551, 53 A.3d 1039 (2012) ("[o]ur Supreme Court [has] emphasized the importance of the mandatory application of the guidelines to *all* cases involving minor children, including those cases involving families with high incomes" [emphasis added]), cert. denied, 308 Conn. 937, 66 A.3d 500 (2013); see also General Statutes § 46b-215b (a) (guidelines "shall be considered in *all* determinations of child support award amounts" [emphasis added]).

The 1999 guidelines include the schedule of basic child support obligations (schedule) for calculating "the basic child support obligation" for families that have three minor children and a combined net weekly income ranging from $10 to $2500.[15] Regs., Conn. State Agencies § 46b-215a-2a (f). The guidelines, however, direct that, "[w]hen the parents' combined net weekly income exceeds [$2500], child support awards *shall be determined* on a case-by-case basis, and the current support prescribed at the [$2500] net weekly income level shall be the minimum presumptive amount." (Emphasis added.) Id., § 46b-215a-2a (a) (2); see also *Dowling* v. *Szymczak*, 309 Conn. 390, 400, 72 A.3d 1 (2013). Therefore, "[t]o the extent that the parties' combined net weekly income exceeds . . . the upper limit of the schedule . . . the schedule cannot, and does not,

apply, except insofar as the guidelines mandate a minimum child support payment. This does not mean, however, that the guideline principles that inform the schedule, including equity, consistency and uniformity in the treatment of persons in similar circumstances . . . do not continue to apply merely because the parties' income exceeds the schedule's upper limit. As previously discussed, § 46b-215b requires that the guidelines shall be considered in all determinations of child support amounts . . . . Accordingly, the guidelines cannot be ignored when the combined net family income exceeds the upper limit of the schedule, but remain applicable to all determinations of child support." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Maturo* v. *Maturo*, 296 Conn. 80, 109, 995 A.2d 1 (2010).

Critical to this case, the guidelines grant discretionary power for courts to deviate from the presumptive minimum child support amount. "[T]he guidelines emphasize that the support amounts calculated thereunder are the correct amounts to be ordered by the court unless rebutted by a specific finding on the record that such an amount would be inequitable or inappropriate. [Regs., Conn. State Agencies] § 46b-215a-3 (a). Any such finding shall include the amount required under the guidelines and the court's justification for the deviation, which must be based on the guidelines' '[c]riteria for deviation . . . .' Id., § 46b-215a-3 (b)."[16] *Maturo* v. *Maturo*, supra, 296 Conn. 92. "The deviation criteria are narrowly defined and *require the court to make a finding on the record as to why the guidelines are inequitable or inappropriate.*" (Emphasis added.) Id., 100.

Finally, "[i]n modifying the support order in a subsequent proceeding, a trial court may consider the same factors applied in the initial determination to assess any changes in the parties' circumstances since the last court order. . . . Section 46b-215b (c) mandates that the guidelines shall be considered in addition to and not in lieu of the criteria for such awards established in [General Statutes §§] 46b-84 [and] 46b-86 . . . . Specifically, § 46b-84 (d) stipulates that the court shall consider the age, health, station, occupation, earning capacity, amount and sources of income, estate, vocational skills and employability of each of the parents, and the age, health, station, occupation, educational status and expectation, amount and sources of income, vocational skills, employability, estate and needs of the child." (Citation omitted; internal quotation marks omitted.) *Tomlinson* v. *Tomlinson*, supra, 305 Conn. 559.

We now return to the facts of this case. The court found a substantial change of circumstances in that the children had reached the age of majority and were no longer residing with either parent. These findings gave the court the authority, pursuant to § 46b-86,[17] to modify

the unallocated alimony and child support order. See *Malpeso* v. *Malpeso*, 140 Conn. App. 783, 786, 60 A.3d 380 (2013) (§ 46b-86 [a] "permits the court to modify alimony and child support orders if the circumstances demonstrate that: [1] either of the parties' circumstances have substantially changed; or [2] the final order of child support substantially deviates from the child support guidelines" [internal quotation marks omitted]). The court, however, made four critical errors in its attempt to unbundle the child support amount from the original unallocated alimony and child support order.

First, the court incorrectly used the 2005 guidelines. In December, 2005, the parties' agreement had been opened and modified to allow the defendant to purchase certain property from the plaintiff. The court, in its attempt to unbundle the child support from the unallocated alimony and child support, applied *Borkowski* using 2005 as its benchmark. The court, however, applied *Borkowski* incorrectly. Although "[i]t is . . . well established that when a party, pursuant to § 46b-86, seeks a postjudgment modification of a dissolution decree that earlier *had been modified*, he or she must demonstrate that a substantial change in circumstances has arisen subsequent to the entry of the earlier modification"; (emphasis added) *Borkowski* v. *Borkowski*, supra, 228 Conn. 736;[18] this principle does not suggest that the court, in this case, can set its benchmark to 2005 because the original decree setting the $20,000 unallocated alimony and child support order was not modified in 2005. In other words, the court should have applied the 1999 guidelines because the 2005 modification did not relate to, and, importantly, did not modify the unallocated alimony and child support order. See, e.g., *Demartino* v. *Demartino*, 79 Conn. App. 488, 495, 830 A.2d 394 (2003) ("[t]he prior order must therefore be a prior order *modifying* alimony in some manner" [emphasis in original]).

Second, the court incorrectly used the parties' current financial affidavits to determine the combined net weekly income. See *Tomlinson* v. *Tomlinson*, supra, 305 Conn. 558 (directing that courts, in unbundling unallocated alimony and child support order, must determine child support order that was "right and proper *at the time it is entered*," which requires using financial affidavits from time of original decree [emphasis in original]). Third, after incorrectly calculating the combined net weekly income and applying the guidelines with a "presumptive declining factor," the court erroneously attributed the presumptive minimum child support amount to each child rather than attributing the amount to all three children. See Regs., Conn. State Agencies § 46b-215a-2b (c) (3) (B) (calculated presumptive minimum child support amount from schedule represents "the total current support obligation of both parents for *all children* who support is being deter-

mined" [emphasis added]).

Fourth and finally, because the parties' 2004 combined net weekly income, as noted by the court at the time of dissolution, would have exceeded the $2500 threshold, the child support award was to be determined on a case-by-case basis. See Regs., Conn. State Agencies § 46b-215a-2a (2). Therefore, the court should have considered the deviation criteria and not simply relied on the guidelines' schedule setting the presumptive minimum child support amount. See *Tomlinson* v. *Tomlinson*, supra, 305 Conn. 560 (noting that court, in unbundling child support from unallocated order, "improperly may have relied *solely* on the presumptive guidelines amount in calculating the portion attributable to child support at the time of dissolution" [emphasis added]). Accordingly, the court in this case applied the wrong legal standard in determining the child support amount attributable to the original unallocated alimony and child support order.

On remand, to determine the proper child support amount, the court must correctly unbundle the child support from the 2004 unallocated alimony and child support order. First, it must determine the parties' combined net weekly income using the 2004 financial affidavits. Second, it must calculate the presumptive minimum for the then three minor children.[19] Because the net weekly income exceeded the schedule's $2500 threshold, the court may, "in the exercise of [its] discretion, determine the correct percentage of the combined net weekly income assigned to child support in light of the circumstances in [this] particular case, including a consideration of other, additional obligations imposed on the noncustodial parent, any deviation from the schedule or the principles on which the guidelines are based must be accompanied by the court's explanation as to why the guidelines are inequitable or inappropriate and why the deviation is necessary to meet the needs of the child." *Maturo* v. *Maturo*, supra, 296 Conn. 95–96.

Further, the court will need to ascertain the intent of the parties. See *Isham* v. *Isham*, 292 Conn. 170, 180–81, 972 A.2d 228 (2009). The record reveals that the parties had "reached an agreement as to child support in their [a]greement." The agreement states that the "defendant shall pay to the [plaintiff] as alimony, or separate maintenance for the support of the *minor children* the sum of $20,000 per month." (Emphasis added.) This court previously determined that the "only plausible interpretation of this clause is that it provides for unallocated alimony and child support." *Malpeso* v. *Malpeso*, supra, 140 Conn. App. 788. The language, however, was not clear as to how the $20,000 was to be divided. Because "support agreements that are not in accordance with the financial dictates of the guidelines are not enforceable unless one of the guidelines' deviation criteria is present, such as when the terms

of the agreement are in the best interest of the child";
*Brent* v. *Lebowitz*, 67 Conn. App. 527, 532, 787 A.2d
621, cert. granted on other grounds, 260 Conn. 902, 793
A.2d 1087 (2002) (appeal withdrawn April 25, 2002); the
court must determine what was intended to be child
support within the unallocated alimony and child sup-
port order to ensure the agreement did not run afoul
of the guidelines.[20]

Our Supreme Court has "characterized the financial
orders in dissolution proceedings as resembling a
mosaic, in which all the various financial components
are carefully interwoven with one another. . . .
Accordingly, when an appellate court reverses a trial
court judgment based on an improper alimony, property
distribution, or child support award, the appellate
court's remand typically authorizes the trial court to
reconsider all of the financial orders. . . . We also have
stated, however, that [e]very improper order . . . does
not necessarily merit a reconsideration of all of the trial
court's financial orders. A financial order is severable
when it is not in any way interdependent with other
orders and is not improperly based on a factor that is
linked to other factors. . . . In other words, an order
is severable if its impropriety does not place the correct-
ness of the other orders in question. . . . Determining
whether an order is severable from the other financial
orders in a dissolution case is a highly fact bound
inquiry." (Citations omitted; internal quotation marks
omitted.) *Tuckman* v. *Tuckman*, supra, 308 Conn. 214.

In the present case, we have concluded that the court
applied the wrong legal standard in calculating the child
support amount from the original unallocated alimony
and child support order. Therefore, to determine a new
alimony order, after the correct child support amount
is deducted from the original unallocated alimony and
child support order, the court must "subtract that
amount from the total amount of [the] unallocated [ali-
mony and] support [order] . . . ."; *Coury* v. *Coury*,
supra, 161 Conn. App. 304; i.e., subtract the 2004 child
support amount from $20,000. The difference repre-
sents the 2004 alimony award. Because "grounds for
modification have been shown . . . the trial court is
entitled to consider all the factors, as mandated by . . .
[§] 46b-82,[21] available in determining the initial award."
(Footnote added.) *Matles* v. *Matles*, 8 Conn. App. 76,
81, 511 A.2d 363 (1986). Consequently, the court must
now compare the newly determined 2004 alimony
award against the parties' 2012 financial circumstances
because the defendant's second motion to modify ali-
mony and child support was before the court in 2012.
Finally, because we do not know the impact of the
college expenses on the court's analysis in developing
a new alimony order on remand, we conclude that the
financial mosaic as to alimony must be crafted anew.
Accordingly, a new hearing is required to consider the
financial issues pertaining to fashioning an alimony

order, if any.[22] See, e.g., *Tuckman* v. *Tuckman*, supra, 308 Conn. 215.

## II

The defendant's next claim is that the court abused its discretion in determining the effective date of the modification. Specifically, he points to various inconsistencies among the court's three orders regarding their retroactivity, which make it "impossible to calculate a new arrearage figure . . . ." The defendant contends that any arrearage should be retroactive, by operation of law, to the day when the parties' oldest child reached the age of majority and not the date his motion to modify was served on the plaintiff, February 9, 2012. According to the defendant, this date is not an impediment for the court to order retroactivity to April 1, 2006, when the oldest child reached the age of majority. He cites no case law to support this proposition. Rather, the defendant argues that § 46b-86 (a) must be harmonized with General Statutes § 46b-66.[23] We reject the defendant's argument, but we conclude that the court abused its discretion because it did not enter a clear order as to the retroactivity of its modified alimony order.

"The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Notwithstanding the great deference accorded the trial court in dissolution proceedings, a trial court's ruling . . . may be reversed if, in the exercise of its discretion, the trial court applies the wrong standard of law." (Internal quotation marks omitted.) *Nation-Bailey* v. *Bailey*, 144 Conn. App. 319, 323, 74 A.3d 433 (2013), aff'd, 316 Conn. 182, 112 A.3d 144 (2015).

The following legal principles guide our analysis. "As a general matter, [t]he obligation of a parent to support a child terminates when the child attains the age of majority, which, in this state, is eighteen. General Statutes § 1-1d; *Kennedy* v. *Kennedy*, 177 Conn. 47, 52, 411 A.2d 25 (1979)." (Internal quotation marks omitted.) *Hughes* v. *Hughes*, 95 Conn. App. 200, 208, 895 A.2d 274, cert. denied, 280 Conn. 902, 907 A.2d 90 (2006). Nonetheless, "[t]his court has held that [w]hen, as part of a divorce decree, a parent is ordered to pay a specified amount periodically for the benefit of more than one child, the emancipation of one child does not automatically affect the liability of the parent for the full amount. . . . The proper remedy . . . is to seek a modification of the decree." (Internal quotation marks omitted.) Id., 209.

The defendant's argument is untenable because the

relevant statutes and case law contradict his position. Section 46b-66 explicitly states that agreements "shall be modifiable to the same extent as any other provision of any order or decree in accordance with section 46b-86." General Statutes § 46b-66 (b). Section 46b-86 (a) provides in relevant part: "No order for periodic payment of permanent alimony or support may be subject to retroactive modification, except that the court may order modification with respect to any period during which there is a *pending motion for modification of an alimony or support order from the date of service of notice of such pending motion upon the opposing party . . . .*" (Emphasis added.) Therefore, notwithstanding the general rule that in Connecticut, absent an agreement, a parent's obligation to support a child ends at the age of majority, the party seeking to terminate such obligation must file a motion with the court.[24] This court previously has observed, "[h]ere, we are faced with a situation where an event certain, the attainment of majority by the child, inevitably is bound to occur. Under such circumstances, logic and reason leads us to conclude that when an order for unallocated alimony and support is entered and when that order does not contain a provision for specific reduction or reallocation upon the child's majority, there is implicit in such order the contemplation that when the child attains majority the trial court, *upon motion of either party*, must conduct a hearing to ascertain what part, if any, of the order is then attributable to child support and it must modify the order to reflect the same." (Emphasis added.) *Matles* v. *Matles*, supra, 8 Conn. App. 81. Here, the defendant did not file a motion to modify the unallocated alimony and child support order when his son reached the age of majority.

It is axiomatic that the court has discretion in determining the amount of alimony to be paid retroactively. See General Statutes § 46b-86 (a). We have explained that a "retroactive award may take into account the long time period between the date of filing a motion to modify, or, with this case, the contractual retroactive date, and the date that motion is heard, which in this case spans a number of years. The court may examine the changes in the parties' incomes and needs during the time the motion is pending to fashion an equitable award based on those changes. The current alimony need not be uniformly retroactive, if such a result would be inequitable." *Zahringer* v. *Zahringer*, 124 Conn. App. 672, 689, 6 A.3d 141 (2010).

Notwithstanding this broad discretion afforded to our trial courts, the court here abused its discretion by failing to provide a clear retroactivity order. In its first memorandum of decision, it "declines" to apply its order retroactively. In its second decision, by contrast, the court applies its orders retroactively "to the [date of] service of the motion for modification," which was February 9, 2012. That same order becomes unclear,

however, when later in the same paragraph of the same memorandum of decision, the court states that it has "incorrectly declined to award retroactivity to the date of majority," but it was "correct[ing] that error." There was no further clarification.

Accordingly, we conclude that the court abused its discretion by not entering a clear order as to the retroactivity of its modified alimony and child support order. On remand, after it calculates the proper alimony award, if any, the court must resolve the issue of retroactivity.

### III

The defendant also claims that the court incorrectly concluded that it lacked jurisdiction to terminate the alimony. Specifically, he claims that because the hearings began in October, 2012, and the court found that the college expenses constituted a substantial change in circumstances, it had the authority to terminate alimony. We agree that the court had jurisdiction to terminate alimony.

In its final memorandum, the court made the following observation: "The defendant's argument concerning the termination of alimony is flawed. The separation agreement specifically limits any modification of alimony to specific events. The court does not have jurisdiction to terminate alimony." When the underlying issue of the claim pertains to the jurisdiction of the court, it is a question of law over which our review is plenary. *Tittle* v. *Skipp-Tittle*, 161 Conn. App. 542, 549, 128 A.3d 590 (2015); see also *Parker* v. *Commissioner of Correction*, 117 Conn. App. 727, 729, 980 A.2d 930, ("[o]ur standard of review is plenary when examining whether jurisdiction exists"), cert. denied, 294 Conn. 917, 983 A.2d 851 (2009).

General Statutes § 46b-1 provides that the Superior Court has subject matter jurisdiction over legal disputes in "family relations matters," including alimony; General Statutes § 46b-1 (4); and § 46b-86 (a) provides that the court has continuing subject matter jurisdiction to modify alimony orders. *Amodio* v. *Amodio*, 247 Conn. 724, 729, 724 A.2d 1084 (1999). "Together, therefore, these two statutes provided the trial court with subject matter jurisdiction over the modification claim in the present case." Id., 729–30.

In cases such as this one, where the parties have an agreement, the court must determine whether it has the statutory authority to act. "Separate and distinct from the question of whether a court has jurisdictional power to hear and determine a support matter, however, is the question of whether a trial court properly applies § 46b-86 (a), that is, properly exercises its statutory authority to act. Section 46b-86 (a) authorizes the court to modify support orders, [u]nless and to the extent that the decree precludes modification . . . ."

(Emphasis omitted; internal quotation marks omitted.) Id., 730.

In the present case, the court confused the issues of subject matter jurisdiction and the proper exercise of its authority to act pursuant to § 46b-86 (a). Consequently, the court erred in interpreting the agreement as depriving it of the jurisdiction to terminate alimony. The agreement limited modification until July 1, 2012. After that date, "upon a court of competent jurisdiction's determination that there has been a substantial change of circumstances," the alimony could be modified. Although the defendant's motion was served in February, 2012, the court held hearings on the motion starting in October, 2012. We take no position on whether modification or termination of alimony was warranted. We merely conclude that the court "had the jurisdiction to entertain the claim for modification [or termination of alimony]"; *Amodio* v. *Amodio*, supra, 247 Conn. 732; and had the statutory authority to act.

IV

The defendant's final claim is that the court abused its discretion by finding him in contempt and by awarding attorney's fees and costs to the plaintiff. We address each claim in turn.

A

We first address the defendant's claim that the court abused its discretion in finding him in contempt. The following facts are necessary to resolve this claim. The court found the defendant's net monthly income to be $58,269. It also found that the defendant was paying $32,000 per month toward his children's college expenses. Pursuant to the unallocated alimony and child support order, the defendant's monthly financial obligation to the plaintiff was $20,000. Deducting these two liabilities from his net monthly income, $6269 was left for the defendant to pay his other monthly expenses. The defendant testified that he stopped making the $20,000 monthly payments in May, 2011, because "mathematically [he could not] afford it."

The court made several findings regarding the defendant's real estate assets. On the basis of the defendant's October, 2012 financial affidavit, it found that the total value of his real estate was approximately $8,800,000, with unencumbered equity totaling $5,050,000. The court also found that four of the five properties did not have mortgages. Furthermore, the court found that many of the defendant's claimed expenses had been voluntarily assumed. Ultimately, under the first and second memoranda of decision, the court found the defendant in contempt because of his "wilful and intentional violation of the court orders." Specifically, the court stated that the defendant had "avail[ed] himself of self-help" and found the defendant's claim of an "inability to pay to be without merit." Although the court ordered

that the "arrearage which must be recalculated to reflect the current arrearage accruing since December, 2012, as modified with retroactivity," it made no recalculation nor did it explain why it selected December, 2012, as the start of accrual the period.

Before resolving the defendant's claim, we set forth the standard of review and relevant legal principles. "A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in [finding] that the actions or inactions of the [alleged contemnor] were in contempt of a court order. . . . To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt. . . . [T]he credibility of witnesses, the findings of fact and the drawing of inferences are all within the province of the trier of fact. . . . We review the findings to determine whether they could legally and reasonably be found, thereby establishing that the trial court could reasonably have concluded as it did."[25] (Internal quotation marks omitted.) *Norberg-Hurlburt* v. *Hurlburt*, 162 Conn. App. 661, 669, A.3d (2016).

"[T]he credibility of witnesses, the findings of fact and the drawing of inferences are all within the province of the trier of fact. . . . We review the findings to determine whether they could legally and reasonably be found, thereby establishing that the trial court could reasonably have concluded as it did." (Internal quotation marks omitted.) *Lynch* v. *Lynch*, 153 Conn. App. 208, 238–39, 100 A.3d 968 (2014), cert. denied, 315 Conn. 923, 108 A.3d 1124, cert. denied, U.S. , 136 S. Ct. 68, 193 L. Ed. 2d 66 (2015).

Although "[c]ontempt is a disobedience to the rules and orders of a court which has power to punish for such an offense"; (internal quotation marks omitted) *Brody* v. *Brody*, 145 Conn. App. 654, 662, 77 A.3d 156 (2013); "[t]he inability of a party to obey an order of the court, without fault on his part, is a good defense to the charge of contempt. . . . The contemnor must establish that he cannot comply, or was unable to do so." (Internal quotation marks omitted.) Id.

Applying these principles to this case, we conclude that the court did not abuse its discretion in finding the defendant in contempt. The record supports the court's findings, namely, that the defendant had substantial equity in various real properties that he could have used to raise funds to meet his alimony and child support obligations. Having heard the defendant's testimony, the court was within its province to credit or not credit that testimony. Nonetheless, in Connecticut, it is clear that "[a]n order of the court must be obeyed until it has been modified or successfully challenged." (Internal quotation marks omitted.) *Sablosky* v. *Sablosky*, 258 Conn. 713, 719, 784 A.2d 890 (2001). Therefore, "until a motion is brought to and is granted by the court, that

party may be held in contempt in the discretion of the trial court if, in the interim, the complaining party fails to abide by the support order." Id., 722. Our Supreme Court repeatedly has advised parties against engaging in self-help. See, e.g., id., 719–20. Failure to heed this warning may be a sufficient ground for a party to be held in contempt. See id., 720. The court "was entitled to determine that to exonerate the [defendant] would be an undue inducement to litigants' exercise of *self-help*." (Emphasis in original; internal quotation marks omitted.) Id.

Although we affirm the finding of contempt, we cannot allow the court's arrearage order to stand because, after declaring that it must, the court never recalculated the arrearage. Additionally, in light of our conclusions in parts I and II of this opinion, to conclude otherwise would not serve the interests of justice. See, e.g., *Eldridge* v. *Eldridge*, 244 Conn. 523, 534, 710 A.2d 757 (1998) (affirming contempt finding but reversing attorney's fees award that was based on contempt finding). On remand, the court must recalculate the arrearage amount.

B

The following facts are necessary to resolve the defendant's claim that the court abused its discretion in awarding attorney's fees and costs to the plaintiff. At the hearing, the plaintiff introduced, as a full exhibit, an invoice of her attorney's fees. After the hearing, the plaintiff sought attorney's fees and submitted her counsel's affidavit. In the affidavit, counsel averred that he had spent 60.6 hours on the "plaintiff's motion for modification." At his $400 hourly rate, the total fee billed for this service was $24,240. Additionally, the plaintiff's counsel averred that he had spent 11.7 hours "[o]n the contempt motion" for a total fee of $4680. Adding the two fees and total costs of $915.68 together, the plaintiff sought a total of $29,835.68. After the court found the defendant in contempt, it awarded the plaintiff $40,000 in attorney's fees and $1016.18 in costs.

The following law and principles guides our analysis. General Statutes § 46b-87 grants the court the discretion to award attorney's fees to the prevailing party in a contempt proceeding.[26] "The award of attorney's fees in contempt proceedings is within the discretion of the court. . . . An abuse of discretion in granting the counsel fees will be found only if this court determines that the trial court could not reasonably have concluded as it did." (Citation omitted; internal quotation marks omitted.) *Esposito* v. *Esposito*, 71 Conn. App. 744, 748, 804 A.2d 846 (2002). Importantly, "where contempt is established, the concomitant award of attorney's fees properly is awarded pursuant to § 46b-87 and is restricted to efforts related to the contempt action." Id., 749.

The record reveals that the court abused its discretion. The affidavit of the plaintiff's counsel states that counsel worked on a motion for contempt. In this case, each party filed a motion for contempt. The affidavit does not state how many of the 11.7 hours were spent on each motion. Moreover, the affidavit unequivocally states that the plaintiff's counsel spent 60.6 hours on the "*plaintiff's* motion for modification," which accounts for most of the fee that was sought. (Emphasis added.) The record shows that the plaintiff did not file a motion to modify. Even if she had filed such a motion and the court had found the defendant in contempt, any attorney's fees awarded to the plaintiff would be "restricted to efforts related to the contempt action." *Esposito* v. *Esposito*, supra, 71 Conn. App. 749. Thus, the court abused its discretion in its award of attorney's fees and costs. Accordingly, we vacate the award of attorney's fees and remand this matter to the court for further proceedings in accordance with this opinion.

The judgment is reversed as to the court's financial orders and award of attorney's fees and costs, and the case is remanded for further proceedings consistent with this opinion. The judgment is affirmed as to the finding of contempt.

In this opinion the other judges concurred.

[1] The plaintiff, Charlotte Malpeso, filed an appeal challenging the court's use of the child support and arrearage guidelines in determining the child support amount from the original unallocated alimony and child support order. She also claims that the court erred in its retroactivity order. The plaintiff's appeal was assigned docket number AC 37203. Upon a joint motion to consolidate, this court granted the motion and AC 37203 was treated as a cross appeal to AC 36622 for the purposes of briefing and argument. We note that our resolution of the defendant's claims also disposes of the plaintiff's cross appeal.

[2] We do not address the defendant's third claim. The record reveals that the court did not place a lien on any real property. In other words, the defendant was not aggrieved, which is a condition precedent for us to rule on a matter. See General Statutes § 52-263 (right of appeal from Superior Court if "either party is aggrieved by the decision of the court"); see also Practice Book § 61-1. Thus, we decline to accept the invitation to provide an advisory opinion. See *Nowacki* v. *Nowacki*, 144 Conn. App. 503, 514, 72 A.3d 1245 ("this court does not render advisory opinions"), cert. denied, 310 Conn. 939, 79 A.3d 891 (2013).

[3] The agreement stated in relevant part: "3.1 During the lifetime of the [defendant] and until the death, remarriage or cohabitation of the [plaintiff], whichever event shall first occur, the [defendant] shall pay to the [plaintiff] as alimony, or separate maintenance for the support of the minor children the sum of $20,000 per month."

[4] In its entirety, the clause provided: "3.2 The amount and term of alimony shall be modifiable only under the following circumstances:

"(a) Upon a court of competent jurisdiction's determination that the [defendant] has become disabled as defined by the Social Security Administration or in the event that the economy of New York undergoes a substantial change as a result of a catastrophic event (such as 9/11).

"(b) After July 1, 2012, upon a court of competent jurisdiction's determination that there has been a substantial change of circumstances as provided for in Connecticut General Statute[s] § 46b-84a.

"(c) The parties contemplate that the [plaintiff] may obtain full or part-time employment either before or after entry of a decree of dissolution. Such employment shall not be deemed a substantial change in circumstances during the first eight years of the alimony term.

"(d) Only under the circumstances set forth in this paragraph 3.3 shall the [defendant's] obligation to pay alimony pursuant to paragraph 3.1 be modifiable during the first eight years."

Paragraph 3.3 provided: "The parties shall endeavor to negotiate child

support if alimony terminates while any child or children are minors. If they are unable to agree, the amount of child support to be paid by the [defendant] [it] shall be determined by a court of competent jurisdiction. Child support payments shall be retroactive to the last day on which alimony was paid."

[5] The agreement provided in relevant part: "10.2 The [defendant] shall be responsible for payment of the costs of undergraduate college and/or vocational educational expenses for the three minor children. For purposes of this subparagraph, said undergraduate college educational expenses shall include, room, board, books, tuition, fees and a reasonable travel allowance to [and] from home. Said expenses shall also include college application fees and costs, the costs of SAT preparation courses and the costs of required pre-college tests."

[6] At the hearing for the second motion, the defendant elaborated that his financial difficulties stemmed from pending litigation concerning his dental practice and significant damage caused by Hurricane Sandy on his primary residence. The defendant argued that, collectively, the litigation and repairs would reduce his income.

[7] In *Malpeso* v. *Malpeso*, 140 Conn. App. 783, 788–89, 60 A.3d 380 (2013), we held that the child support encompassed within the unallocated alimony and support order was not subject to paragraph 3.2 of the parties' agreement that limited the modification of the alimony.

Before this court's reversal of Judge Wenzel's ruling on the defendant's amended motion to modify alimony and child support filed in August, 2011, the defendant filed his second motion to modify alimony and child support on January 25, 2012. Neither party raised or briefed the vitality of the August, 2011, amended motion. Moreover, Judge Schofield explicitly addressed, inter alia, the defendant's second motion to modify alimony and child support filed in January, 2012. Therefore, we do not address the 2011 amended motion and focus exclusively on the operative motion, the defendant's second motion to modify alimony and child support from which this appeal was taken.

[8] The court did not explain its reasons for rounding down to $8000.

[9] The court provided the parties with its calculations. On the basis of the record, it is clear that the court relied on the parties' current financial affidavits. Specifically, it attributed $15,000 net income per month to the plaintiff and $58,269 net income per month to the defendant. Thus, the court calculated the plaintiff's net weekly income to be $3488.37 and the defendant's net weekly income to be $13,550.93.

[10] For reference, the court appended an undated, handwritten excerpt of the guidelines.

[11] We note that the court did not expressly state that the defendant's new monthly obligation was $11,138. This amount was calculated by applying the court's order, i.e., multiplying $2061 by four weeks ($8862) and subtracting that amount from $20,000.

[12] General Statutes § 46b-84 (d) provides: "In determining whether a child is in need of maintenance and, if in need, the respective abilities of the parents to provide such maintenance and the amount thereof, the court shall consider the age, health, station, occupation, earning capacity, amount and sources of income, estate, vocational skills and employability of each of the parents, and the age, health, station, occupation, educational status and expectation, amount and sources of income, vocational skills, employability, estate and needs of the child."

[13] "To the extent that this task requires us to interpret the meaning and application of the relevant statutes [and regulations] in relation to the facts of the case, our analysis is guided by General Statutes § 1-2z, which directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Tomlinson* v. *Tomlinson*, supra, 305 Conn. 546–47.

[14] All references to the guidelines are made to the guidelines effective August 1, 1999, which were the applicable guidelines at the time of the parties' 2004 dissolution proceedings.

[15] We note that the combined net weekly income ceiling was increased to $4000 in the 2005 guidelines. See Child Support and Arrearage Guidelines (2005), preamble, § (b) (4), p. ii.

[16] From the 1999 guidelines, only the deviation criteria delineated in the guidelines may be used, and the six criteria are as follows: (1) "[o]ther financial resources available to a parent"; (2) "[e]xtraordinary expenses for care and maintenance of the child"; (3) "[e]xtraordinary parental expenses";

(4) "[n]eeds of a parent's other dependents"; (5) "[c]oordination of total family support"; and (6) "[s]pecial circumstances." Regs., Conn. State Agencies § 46b-215a-3. The sixth criteria provides, inter alia, that the court may consider the "[b]est interests of the child," and "[o]ther equitable factors." Id., § 46b-215a-3 (6) (B) and (C). We note that in 2005, just over a year after the parties entered into the agreement, the guidelines were amended to add another consideration to the sixth criterion, "[e]xtraordinary disparity in parental income." See Child Support and Arrearage Guidelines (2005), preamble, § (b) (9), p. ii.

[17] General Statutes § 46b-86 (a) provides in relevant part: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support, an order for alimony or support pendente lite or an order requiring either party to maintain life insurance for the other party or a minor child of the parties may, at any time thereafter, be continued, set aside, altered or modified by the court upon a showing of a substantial change in the circumstances of either party. . . . If a court, after hearing, finds that a substantial change in circumstances of either party has occurred, the court shall determine what modification of alimony, if any, is appropriate, considering the criteria set forth in section 46b-82 . . . ."

[18] In *Borkowski*, the certified question on appeal was, "When a party files a motion to modify which seeks termination of alimony *after a prior modification of alimony*, may the trial court consider any change of circumstances arising since the date of the original decree?" (Emphasis added; internal quotation marks omitted.) *Borkowski* v. *Borkowski*, supra, 228 Conn. 732–33.

[19] The 1999 guidelines set the presumptive minimum for three children whose parents' combined net weekly income is $2500 at $684 per week. See Regs., Conn. State Agencies § 46b-215a-2a (f).

[20] "It is well established that a separation agreement that has been incorporated into a dissolution decree and its resulting judgment must be regarded as a contract and construed in accordance with the general principles governing contracts. . . . When construing a contract, we seek to determine the intent of the parties from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract. . . . Extrinsic evidence is always admissible, however, to explain an ambiguity appearing in the instrument." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Isham* v. *Isham*, supra, 292 Conn. 180–81.

[21] General Statutes § 46b-82 (a) provides in relevant part: "In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall consider the evidence presented by each party and shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability and feasibility of such parent's securing employment."

[22] The scope of that hearing is limited. As discussed, when the alimony order is determined from the original unallocated alimony and child support order, the court will need to consider the financial resources of the defendant. This necessarily implicates considering the impact of the college expenses on his ability to pay any new alimony award. See generally *Greco* v. *Greco*, 275 Conn. 348, 361, 880 A.2d 872 (2005) ("defendant's ability to pay is a material consideration in formulating financial awards"). This evaluation, however, does not require the court to revisit the college expense order and modify it. Moreover, the limited scope of the hearing, in this case, does not require a court to reconsider long settled property distribution amongst the parties.

[23] General Statutes § 46b-66 provides in relevant part: "(a) In any case under this chapter where the parties have submitted to the court an agreement concerning the custody, care, education, visitation, maintenance or support of any of their children or concerning alimony or the disposition

of property, the court shall inquire into the financial resources and actual needs of the spouses and their respective fitness to have physical custody of or rights of visitation with any minor child, in order to determine whether the agreement of the spouses is fair and equitable under all the circumstances. If the court finds the agreement fair and equitable, it shall become part of the court file, and if the agreement is in writing, it shall be incorporated by reference into the order or decree of the court. . . . If the agreement is in writing and provides for the care, education, maintenance or support of a child beyond the age of eighteen, it may also be incorporated or otherwise made a part of any such order and shall be enforceable to the same extent as any other provision of such order or decree, notwithstanding the provisions of section 1-1d.

"(b) Agreements providing for the care, education, maintenance or support of a child beyond the age of eighteen entered into on or after July 1, 2001, shall be modifiable to the same extent as any other provision of any order or decree in accordance with section 46b-86. . . ."

[24] This court has also commented that "[i]n 1990 . . . the Connecticut legislature passed an amendment to § 46b-86 (a) that provided, inter alia, that '[n]o order for periodic payment of permanent alimony or support may be subject to retroactive modification, except that the court may order modification with respect to any period during which there is a pending motion for modification of an alimony or support order from the date of service of notice of such pending motion upon the opposing party pursuant to section 52-50.' . . . This amendment permitted the retroactive modification of alimony awards back to the date of the motion to modify." (Citation omitted; emphasis omitted.) *Milbauer* v. *Milbauer*, 54 Conn. App. 304, 310, 733 A.2d 907 (1999).

[25] Findings of indirect civil contempt must be supported by clear and convincing evidence. *Brody* v. *Brody*, 315 Conn. 300, 302–303, 105 A.3d 887 (2015). Here, the defendant characterizes the court's findings as inconsistent, namely, the court's finding that his conduct was wilful juxtaposed against the court's determination that he "convincingly [testified] that he believed that once he assumed the college expense obligations . . . his unallocated alimony and support payment would be reduced." The defendant points to these findings as confirmation that the court's finding of contempt was not supported by clear and convincing evidence as required by *Brody*. We need not address this argument for two reasons. The court made several other findings, i.e., the defendant's real estate assets, to support its finding of contempt. Moreover, the defendant, in his brief, does not analyze if the clear and convincing standard applies retrospectively, and we will not endeavor to do so. See *Denardo* v. *Bergamo*, 272 Conn. 500, 508, 863 A.2d 686 (2005).

[26] General Statutes § 46b-87 provides in relevant part: "When any person is found in contempt of an order of the Superior Court entered under . . . section 46b-86, the court may award to the petitioner a reasonable attorney's fee . . . such sums to be paid by the person found in contempt . . . ."