******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# CHARLOTTE MALPESO *v.* PASQUALE MALPESO
## (AC 41129)

Keller, Elgo and Moll, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dissolved, appealed to this court from the judgment of the trial court granting motions to modify filed by the defendant and entering modified financial orders. The dissolution judgment had incorporated the parties' separation agreement, which provided that the defendant would pay the plaintiff $20,000 per month in unallocated alimony and child support, and contained a clause that limited the circumstances under which alimony could be modified. In 2012, the defendant filed a motion to modify alimony and child support, alleging, inter alia, that he was paying the children's college expenses and that there had been a downturn in his financial circumstances. The plaintiff filed a motion for contempt, alleging, inter alia, that the defendant had failed to comply with the unallocated alimony and child support order from October, 2011 through June, 2012. The trial court granted the defendant's 2012 motion to modify, converting the unallocated alimony and child support order into a periodic alimony order of $11,138 per month. The court also determined that the modification order would be retroactive but did not set forth clearly the effective date of the modification order. With respect to the motion for contempt, the court determined that the defendant was in wilful and intentional violation of the court orders, and it awarded the plaintiff attorney's fees and costs. The defendant appealed and the plaintiff cross appealed from those decisions to this court, which affirmed the trial court's finding of contempt but reversed the court's financial orders and award of attorney's fees and costs, and remanded the case for further proceedings. This court also concluded that the trial court abused its discretion by failing to enter a clear order as to the retroactivity of the modification order and directed the court, on remand, to resolve the issue of retroactivity after calculating the proper alimony award, if any. In 2014, the defendant filed another motion to modify alimony and child support, which was subsequently amended. The amended motion alleged, inter alia, that there had been a downturn in the defendant's financial circumstances and that his health had deteriorated significantly. In October, 2017, the trial court rendered judgment with respect to, inter alia, the defendant's 2012 and 2014 motions to modify. The court granted the 2012 motion to modify, reducing the defendant's alimony obligation to $7500 per month as of July, 2012, and it granted the 2014 motion to modify, as amended, reducing the defendant's alimony obligation to $4000 per month as of July, 2016. *Held*:

1. The plaintiff could not prevail on her claim that the trial court, in granting the 2012 motion to modify, erroneously determined that the defendant's payment of the children's college expenses constituted a substantial change in circumstances warranting modification of alimony, which was based on her claim that the parties' separation agreement required the defendant to pay the college expenses and contained no express provision permitting the modification of alimony on the basis of the defendant's payment of those expenses: that court did not determine that the defendant's payment of the college expenses alone constituted a substantial change in circumstances and, instead, concluded that the magnitude of the college and related expenses that the defendant had paid constituted a substantial change in circumstances, and although the separation agreement required the defendant to pay for the college expenses, it also provided that alimony was modifiable upon a trial court determining that a substantial change in circumstances had occurred; furthermore, the plaintiff's claim that the trial court failed to consider the entirety of the parties' financial circumstances in granting the 2012 motion to modify was unavailing, as the court concluded that, although the defendant's net monthly income increased in 2012 relative to the time of dissolution, the significant increase in the defendant's expenses and liabilities from the time of dissolution to 2012 constituted a substan-

tial change in circumstances, and the court also set forth findings of fact regarding the plaintiff's age, education, employment history, and employment status.

2. The plaintiff's claim that the trial court erroneously found that the defendant continued to suffer from cellulitis at the time of the proceedings on remand was unavailing: although the defendant's treating physician testified that the defendant currently did not suffer from cellulitis, but that the prior cellulitis had contributed in whole or in part to the disability of the defendant's right leg and that the defendant had a predisposition for recurrent cellulitis, the court's reference to the defendant's "current cellulitis" was not improper, as the court, in using that phrase, was discussing the lasting effects of the defendant's prior cellulitis, of which there was ample evidence in the record, and before referring to the defendant's current cellulitis, the court found that he was at risk for recurrent cellulitis, which belied the suggestion that the court found that he was suffering from an active bout of cellulitis at the time of the proceedings on remand; furthermore, the trial court did not improperly engage in speculation by considering the defendant's risk of developing future medical conditions, and it properly considered the parties' respective financial circumstances in adjudicating the 2014 motion to modify, as amended, as the court considered, inter alia, the defendant's gross monthly income, net monthly income, and monthly expenses in 2012 and in 2017, concluded that the defendant's reduction in income since 2012 and increased expenses, along with his significant health issues, constituted a substantial change in circumstances, and, with respect to the plaintiff, found, inter alia, that she had been unemployed since 2008 and had been living with her parents since January, 2017.

3. The trial court did not abused its discretion in modifying alimony retroactively under the circumstances of this case:

a. The plaintiff could not prevail on her claim that the trial court erred in prohibiting her from offering testimony that was relevant to the court's determination regarding whether to modify the defendant's alimony obligations retroactively, which was based on her claim that the court, by sustaining the objection of the defendant's counsel to the question directed to her concerning the effect of the defendant's contemptuous conduct, improperly denied her the opportunity to testify about the consequences of the defendant's contemptuous conduct and that such testimony would have provided the court with a stronger foundation on which to deny the defendant retroactive modification of his alimony obligations; even if the court abused its discretion by sustaining the objection raised by the defendant's counsel, the plaintiff failed to demonstrate that the alleged error was harmful, as she offered testimony regarding the consequences of the defendant's conduct after the court initially sustained the objection, and the court, in its memorandum of decision, expressly considered the plaintiff's argument that the defendant's conduct had harmed her.

b. The plaintiff's claim that the trial court erred in modifying the defendant's alimony obligations retroactively because the defendant had unclean hands was unavailing; that court, after setting forth the plaintiff's argument in opposition to the retroactive modification of alimony, acknowledged the defendant's arguments raised in support of modifying alimony retroactively, namely, that the plaintiff was in good health yet unemployed, that the plaintiff was eligible to receive reduced social security benefits, that the motions to modify were several years old, and that the defendant had overpaid the plaintiff, and the plaintiff cited to no appellate authority to support her contention that the finding of contempt against the defendant required the court to deny the retroactive modification of alimony.

Argued January 10—officially released April 30, 2019

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Hon. Dennis F. Harrigan*, judge trial referee; judgment dissolving the marriage and granting certain other relief; thereafter, the court, *Wenzel, J.*, sustained in part the plaintiff's objection to the defendant's motion for modi-

fication of child support, and the defendant appealed to this court, which reversed the judgment and remanded the case for further proceedings; subsequently, the court, *Schofield, J.*, granted the plaintiff's motion for contempt and granted the defendant's motion to modify child support and alimony, and the defendant appealed to this court; thereafter, the court, *Schofield, J.*, granted in part the plaintiff's motion for clarification and granted in part the defendant's motion to reargue, and the defendant filed an amended appeal and the plaintiff filed a separate appeal with this court; subsequently, this court consolidated the appeals, reversed the judgment in part, and remanded the case for further proceedings; thereafter, the court, *Diana, J.*, granted the defendant's motion for modification of child support, denied the defendant's amended motion to modify child support and alimony, granted the defendant's motion to modify child support and alimony, granted the defendant's amended motion to modify child support and alimony, and granted certain other relief; subsequently, the court, *Diana, J.*, denied the plaintiff's motions to reargue, and the plaintiff appealed to this court. *Affirmed.*

*Kevin F. Collins*, with whom, on the brief, was *Ami Jayne Wilson*, for the appellant (plaintiff).

*Barbara M. Schellenberg*, with whom was *Richard L. Albrecht*, for the appellee (defendant).

*Opinion*

MOLL, J. In this postjudgment dissolution matter, the plaintiff, Charlotte Malpeso, appeals from the judgment of the trial court, rendered on remand from this court, granting motions to modify filed by the defendant, Pasquale Malpeso, and entering modified financial orders. On appeal, the plaintiff claims that: (1) the court erred in granting the defendant's motion to modify filed on January 25, 2012, because the court (a) improperly determined that the defendant's payment of the college expenses of the parties' children constituted a substantial change in circumstances warranting the modification of alimony and (b) failed to consider the totality of the parties' respective financial circumstances; (2) the court erred in granting the defendant's motion to modify filed on October 10, 2014, as amended, because the court (a) made a clearly erroneous factual finding regarding the defendant's health and engaged in speculation by considering the defendant's risk of developing future medical conditions, and (b) failed to consider the totality of the parties' respective financial circumstances; and (3) the court erred in modifying alimony retroactively.[1] We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the appeal. "The plaintiff . . . married the defendant on August 23, 1986. On June 25, 2004, the marriage was dissolved. At that time, the parties had three minor children: a son, born in 1988; and twin daughters, born in 1993. The judgment of dissolution incorporated the parties' separation agreement (agreement) that provided, inter alia, that the defendant would pay the plaintiff $20,000 per month in unallocated alimony and child support.[2] The agreement also contained a clause limiting the circumstances in which the amount and term of alimony could be modified.[3] The judgment of dissolution was opened and modified once in December, 2005, to allow the defendant to purchase certain property from the plaintiff." (Footnotes in original.) *Malpeso* v. *Malpeso*, 165 Conn. App. 151, 155–56, 138 A.3d 1069 (2016).

In May, 2011, the defendant ceased complying with the $20,000 unallocated alimony and child support order (unallocated order). On May 25, 2011, the defendant filed a motion to modify child support on the basis that the parties' twin daughters would reach the age of majority in June, 2011, and graduate high school at the end of that school year (May, 2011 motion to modify). The plaintiff objected to the May, 2011 motion to modify. Subsequently, the defendant filed an amended motion to modify both alimony and child support, dated August 16, 2011, on the grounds that (1) the parties' twin daughters had reached the age of majority and had graduated from high school and (2) the economy of New York had "undergone a substantial change as

a result of a catastrophic event" (August, 2011 amended motion to modify). On August 22, 2011, the trial court, *Wenzel, J.*, sustained in part the plaintiff's objection, ruling that because alimony and child support could be modified only pursuant to paragraph 3.2 of the agreement, the defendant's claim alleging a substantial change in the economy of New York was the sole proper ground for modification that the defendant had raised. On September 6, 2011, the defendant appealed from the August 22, 2011 ruling (2011 appeal).

On January 25, 2012, while the 2011 appeal was pending, the defendant filed another motion to modify alimony and child support (2012 motion to modify). In support of the 2012 motion to modify, the defendant alleged that (1) the parties' three children had reached the age of majority and were no longer residing with the plaintiff, (2) he was paying the children's college expenses,[4] and (3) there had been a downturn in his financial circumstances.

On June 14, 2012, the plaintiff filed a motion for contempt, alleging, inter alia, that the defendant had failed to comply with the unallocated order from October, 2011 through June, 2012 (2012 motion for contempt). The court, *Schofield, J.*, held multiple hearings between October and December, 2012, to address, inter alia, the defendant's 2012 motion to modify and the plaintiff's 2012 motion for contempt.

On February 19, 2013, this court published its decision resolving the 2011 appeal. See *Malpeso* v. *Malpeso*, 140 Conn. App. 783, 60 A.3d 380 (2013). Reversing the August 22, 2011 ruling of the trial court, this court held that the child support encompassed within the unallocated order was not subject to paragraph 3.2 of the agreement that limited only the modification of alimony. Id., 788–89.

Following this court's resolution of the 2011 appeal, Judge Schofield issued several decisions adjudicating, inter alia, the defendant's 2012 motion to modify and the plaintiff's 2012 motion for contempt.[5] In summary, the court granted the 2012 motion to modify, converting the unallocated order into a periodic alimony order of $11,138 per month, which the court calculated by reducing the unallocated order by $8862, the presumptive monthly amount of child support for three children under the child support and arrearage guidelines in effect in 2005. The court determined that the modification order would be retroactive; however, the court did not set forth clearly the effective date of the modification order. In addition, the court concluded that it lacked subject matter jurisdiction to consider the defendant's request to terminate alimony. With respect to the 2012 motion for contempt, the court determined that the defendant was in "wilful and intentional violation of the court orders." As relief, the court ordered the defendant to pay the attorney's fees and costs of the

plaintiff in the amount of $41,016.18. Furthermore, after initially ordering the defendant to pay the plaintiff $440,000, the sum of the arrearage from October, 2011 through July, 2013, the court determined that the arrearage had to be recalculated; however, the court did not endeavor to recalculate the arrearage. In 2014, the defendant appealed and the plaintiff cross appealed from Judge Schofield's decisions (2014 appeal and cross appeal).

On October 10, 2014, the defendant filed another motion to modify alimony and child support (2014 motion to modify). In support of the 2014 motion to modify, the defendant alleged that (1) there had been a downturn in his financial circumstances and (2) the plaintiff had sold her residence for a considerable sum and had relocated to a less costly residence.

On May 3, 2016, this court published its decision resolving the 2014 appeal and cross appeal. See *Malpeso* v. *Malpeso*, supra, 165 Conn. App. 151. First, this court concluded that the trial court applied the wrong legal standard in calculating the child support component of the unallocated order. Id., 163–74. After giving the trial court guidance regarding how to calculate the child support component of the unallocated order on remand, this court provided the following additional directions: "[T]o determine a new alimony order, after the correct child support amount is deducted from the [unallocated order], the court must subtract that amount from the total amount of [the unallocated order] . . . i.e., subtract the 2004 child support amount from $20,000. The difference represents the 2004 alimony award. Because grounds for modification have been shown . . . the trial court is entitled to consider all the factors, as mandated by . . . [General Statutes §] 46b-82, available in determining the initial award. . . . Consequently, the court must now compare the newly determined 2004 alimony award against the parties' 2012 financial circumstances because the [2012 motion to modify] was before the court in 2012. Finally, because we do not know the impact of the college expenses on the court's analysis in developing a new alimony order on remand, we conclude that the financial mosaic as to alimony must be crafted anew. Accordingly, a new hearing is required to consider the financial issues pertaining to fashioning an alimony order, if any."[6] (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., 171–74. Second, this court concluded that the trial court abused its discretion by failing to enter a clear order as to the retroactivity of the modification order and directed the court, on remand, to "resolve the issue of retroactivity" after calculating the proper alimony award, if any. Id., 174–78. Third, this court concluded that the trial court erroneously determined that it lacked subject matter jurisdiction to entertain the defendant's claim seeking to modify or terminate alimony. Id., 178–80. Finally, this court upheld

the finding of contempt against the defendant for his noncompliance with the unallocated order but concluded that the trial court erred by failing to recalculate the amount of the arrearage owed in relation to the contempt finding and abused its discretion by awarding excessive attorney's fees and costs with respect to the 2012 motion for contempt. Id., 180–85. This court directed the trial court, on remand, to recalculate the arrearage. Id., 183. In sum, this court affirmed the trial court's finding of contempt, but we reversed the court's financial orders and award of attorney's fees and costs, and remanded the case for further proceedings. Id., 185.

On July 11, 2016, the defendant submitted a request to amend the 2014 motion to modify, which the court, *Colin, J.*, granted on August 1, 2016. In support of the 2014 motion to modify, as amended, the defendant alleged that (1) there had been a downturn in his financial circumstances, (2) the plaintiff sold her residence for a considerable sum and relocated to a less costly residence, and (3) his health had deteriorated significantly.

Following this court's remand in the 2014 appeal and cross appeal, the trial court, *Diana, J.*, held hearings from October 16 through 18, 2017, on the following motions: (1) the defendant's May, 2011 motion to modify; (2) the defendant's August, 2011 amended motion to modify; (3) the defendant's 2012 motion to modify; (4) the plaintiff's 2012 motion for contempt; and (5) the defendant's 2014 motion to modify, as amended. By way of a memorandum of decision issued on October 26, 2017, the court entered the following orders. First, the court unbundled the unallocated order, determining that the child support component amounted to $3000 and the alimony component amounted to $17,000. Second, the court granted the May, 2011 motion to modify, terminating the defendant's $3000 monthly child support obligation as of June 30, 2011. Third, the court denied the August, 2011 amended motion to modify. Fourth, the court granted the 2012 motion to modify, reducing the defendant's alimony obligation to $7500 per month as of July, 2012. Fifth, observing that Judge Schofield's finding of contempt against the defendant had been affirmed but that the associated award of attorney's fees and costs had been vacated with directions on remand, the court ordered the defendant to pay $4680 in attorney's fees pursuant to General Statutes § 46b-87. Sixth, the court granted the 2014 motion to modify, as amended, reducing the defendant's alimony obligation to $4000 per month as of July, 2016. Finally, the court recalculated the alimony arrearage to be $628,000 and found that, as of October 18, 2017, the defendant had paid the plaintiff $618,627 of the balance due and owing. The court ordered the defendant to pay any payments due to the plaintiff by way of a monthly $1000 alimony payment, unless otherwise agreed to by the parties. The plaintiff moved for reargument of the

court's judgment, which the court denied. This appeal followed. Additional facts and procedural history will be set forth as necessary.

We begin by setting forth the applicable standard of review governing our resolution of the plaintiff's claims. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Thus, unless the trial court applied the wrong standard of law, its decision is accorded great deference because the trial court is in an advantageous position to assess the personal factors so significant in domestic relations cases . . . . With respect to the factual predicates for modification of an alimony . . . award, our standard of review is clear. . . .

"Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Our deferential standard of review, however, does not extend to the court's interpretation of and application of the law to the facts. It is axiomatic that a matter of law is entitled to plenary review on appeal." (Citation omitted; internal quotation marks omitted.) *Fulton* v. *Fulton*, 156 Conn. App. 739, 744–45, 116 A.3d 311 (2015).

I

We first address the plaintiff's claims regarding the granting of the defendant's 2012 motion to modify. Specifically, the plaintiff asserts that the court (1) improperly determined that the defendant's payment of the children's college expenses constituted a substantial change in circumstances warranting modification of alimony and (2) failed to consider the entirety of the parties' respective financial circumstances.[7] We disagree.

A

The plaintiff claims that the court erroneously determined that the defendant's payment of the children's college expenses constituted a substantial change in circumstances warranting modification of alimony. Specifically, the plaintiff asserts that the court's reduction of her alimony award on the ground that the defendant paid the college expenses was improper because the agreement required the defendant to pay the college expenses and contained no express provision permitting the modification of alimony on the basis of the

defendant's payment of those expenses. We are not persuaded.

"[General Statutes §] 46b-86 governs the modification or termination of an alimony or support order after the date of a dissolution judgment. When, as in this case, the disputed issue is alimony [or child support], the applicable provision of the statute is § 46b-86 (a),[8] which provides that a final order for alimony may be modified by the trial court upon a showing of a substantial change in the circumstances of either party. . . . Under that statutory provision, the party seeking the modification bears the burden of demonstrating that such a change has occurred. . . . To obtain a modification, the moving party must demonstrate that circumstances have changed since the last court order such that it would be unjust or inequitable to hold either party to it. Because the establishment of changed circumstances is a condition precedent to a party's relief, it is pertinent for the trial court to inquire as to what, if any, new circumstance warrants a modification of the existing order." (Citation omitted; footnote altered; internal quotation marks omitted.) *Olson* v. *Mohammadu*, 310 Conn. 665, 671–72, 81 A.3d 215 (2013).

In granting the 2012 motion to modify, the court observed that, pursuant to the agreement, the defendant agreed to be "responsible for the costs of undergraduate college . . . for the three minor children." (Internal quotation marks omitted.) The court continued: "In the fall of 2011, the parties' twin daughters attended the University of Vermont and the George Washington University and, in 2012, their son attended Iona College. The parties do not dispute that these expenses, per child, ranged from $40,000 to $60,000 each year and that they were paid for by the defendant. The parties' daughters completed college in four years; their son went to college for a fifth year. In total, the defendant paid for thirteen years of college for the three children. Additionally, he paid for their associated expenses of attending college, which they charged on his credit card. . . . The defendant stated that, in just two years, his children charged a total of $130,000. The defendant also paid for tutors; in 2011, his son's tutor cost $87,500. In the [2012 motion to modify], the defendant asserted a substantial change in circumstances due in part to these college expenses. The defendant claimed . . . that college tuition increased 100 percent since the 2004 dissolution judgment. The magnitude of the college and related payments represents a substantial change in circumstances." Additionally, at the outset of its memorandum of decision, the court stated that it found the defendant's testimony to be credible.

The court did not determine that the defendant's payment of the college expenses alone constituted a substantial change in circumstances; instead, the court, citing the large sums that the defendant had expended

in college expenses and the significant increase in the cost of tuition since the time of dissolution, concluded that the *magnitude* of the college and related expenses that the defendant had paid constituted a substantial change in circumstances. Although the agreement required the defendant to pay for the college expenses, the agreement also provided that alimony was modifiable after July 1, 2012, upon a trial court determining that a substantial change in circumstances had occurred. As found by the trial court, the considerable cost of the college expenses paid by the defendant was a substantial change in circumstances, a finding we leave undisturbed, and, thus, the court did not err in relying on that ground to modify alimony.[9]

B

The plaintiff also thinly claims that the court failed to consider the entirety of the parties' financial circumstances in granting the 2012 motion to modify. We disagree.

In the 2012 motion to modify, the defendant alleged that there had been a downturn in his financial circumstances. With respect to that assertion, the court made the following findings. In 2012, the defendant's gross monthly income was approximately $90,000 and his net monthly income was approximately $60,000, constituting an increase of approximately $20,000 in the defendant's net monthly income relative to the time of dissolution. Moreover, in 2012, the defendant's monthly expenses totaled $66,000 and his unsecured liabilities totaled over $5,000,000, whereas at the time of dissolution the defendant's monthly expenses totaled $16,800 and his liabilities totaled $964,000. The $5,000,000 in unsecured liabilities was comprised primarily of insurance refund claims. Beginning in 2007, several insurers determined that certain payments made to the defendant, who is a self-employed dentist specializing in dental reconstructive surgery, pursuant to his patients' insurance plans were not covered by the plans and, as a result, the insurers demanded a refund of those payments. Since 2015, this " 'clawback' " action has cost the defendant approximately $1,000,000. Moreover, there is a twenty count action pending against the defendant in New York, sounding in, inter alia, unjust enrichment in relation to the refund claims. The court concluded that the significant increase in the defendant's expenses and liabilities from the time of dissolution to 2012 constituted a substantial change in circumstances.

Additionally, in a prior section of its memorandum of decision setting forth additional findings of fact, the court found that the plaintiff was sixty-two years old, healthy, had a high school degree, studied art history in college for one and one-half years, worked as a flight attendant for ten years, had been unemployed since 2008 following her most recent job selling shoes at a

boutique, and had lived with her parents since January, 2017.

At the outset of its memorandum of decision, the court stated that it had considered all of the evidence presented, it had taken judicial notice of the entire court file, and it had found the defendant's testimony credible. Upon our review of the record before us, we conclude that the court properly considered the parties' respective financial circumstances in adjudicating the 2012 motion to modify.

## II

We next turn to the plaintiff's claims regarding the judgment of the court granting the defendant's 2014 motion to modify, as amended. Specifically, the plaintiff asserts that the court (1) erroneously found that the defendant continued to suffer from cellulitis at the time of the proceedings on remand and improperly engaged in speculation by considering the defendant's risk of developing future medical conditions and (2) failed to consider the entirety of the parties' respective financial circumstances. These contentions are unavailing.

## A

The plaintiff asserts that the court erroneously found that the defendant continued to suffer from cellulitis at the time of the proceedings on remand and improperly engaged in speculation by considering the defendant's risk of developing future medical conditions. We are not persuaded.

In his 2014 motion to modify, as amended, the defendant alleged, inter alia, that his health had deteriorated significantly. Specifically, he alleged that: he had been diagnosed with cancer; his prostate was removed in December, 2015, requiring him to be under close medical supervision and causing him to suffer from incontinence; and he suffered from cellulitis,[10] which required him to be hospitalized in 2015 and caused a permanent disability of his right leg.

During the proceedings on remand, the defendant testified that in May, 2015, he developed cellulitis in his right leg, causing him to miss approximately two months of work. He also testified that, although the cellulitis had dissipated after he had been treated with antibiotics, the cellulitis had caused partial numbness in his right leg and, as a result, he no longer drives or performs long surgeries that require him to stand for extended periods of time. Furthermore, the defendant testified that, as a result of the numbness in his leg, he slipped while performing surgery on one of his patients and nicked the patient's nerve with a scalpel that he was holding. The patient subsequently instituted legal proceedings against him. In addition, Angelo Acquista, the defendant's treating physician whose deposition testimony was admitted into evidence in lieu of trial testimony, testified, inter alia, that the defendant currently

did not suffer from cellulitis, but that the prior cellulitis had contributed in whole or in part to the disability of the defendant's right leg and that the defendant had a predisposition for recurrent cellulitis. Dr. Acquista also recommended that the defendant retire from his dental practice because his job required him to stand for long periods of time, which predisposed him to develop ailments, such as a pulmonary embolism,[11] which is a potentially life threatening condition.

Against this backdrop, the court made the following relevant findings with respect to the defendant's health. According to Dr. Acquista, the defendant is at risk for recurrent cellulitis. The defendant "is not only predisposed to recurrent cellulitis but is also experiencing the symptoms of his *current cellulitis*, including abnormal sensations such as swelling and pain, when he stands for a protracted period of time." (Emphasis added.) As a result of the numbness in his leg, the defendant slipped while performing surgery on one of his patients and hit the patient's nerve with a scalpel, which led to the patient commencing legal proceedings against him. The defendant no longer drives or performs long surgeries. Moreover, Dr. Acquista recommended that the defendant retire from his dental practice to avoid developing additional serious medical conditions. The court concluded that the defendant's significant health issues, among other things, constituted a substantial change in circumstances.

The plaintiff asserts that, in light of Dr. Acquista's testimony, the court's finding that the defendant had "current cellulitis" was clearly erroneous. In response, the defendant argues that, in using the phrase "current cellulitis," the court was discussing the lasting effects of the defendant's prior cellulitis, of which there is ample evidence in the record. We agree with the defendant. Although the court referenced the defendant's "current cellulitis," it is evident that the focus of the court's statement was the symptoms that the defendant continued to experience as a result of the prior cellulitis that had afflicted him in 2015. The defendant and Dr. Acquista provided sufficient testimony detailing the consequences of the prior cellulitis on the defendant's current health. In addition, before referring to the defendant's "current cellulitis," the court found that the defendant was at risk for *recurrent* cellulitis, which belies the suggestion that the court found that the defendant was suffering from an active bout of cellulitis at the time of the proceedings on remand.

We also reject the plaintiff's claim that the court improperly engaged in speculation and conjecture by considering the defendant's risk of developing future medical conditions. Although it is axiomatic that a finder of fact may not engage in speculation or conjecture; *Hammel* v. *Hammel*, 158 Conn. App. 827, 834, 120 A.3d 1259 (2015), citing *State* v. *Bharrat*, 129 Conn.

App. 1, 15, 20 A.3d 9, cert. denied, 302 Conn. 905, 23 A.3d 1243 (2011); the court's findings regarding the defendant's risk of developing future medical conditions, which the plaintiff does not challenge as clearly erroneous, are supported by the evidence in the record. In short, the court did not engage in speculation or conjecture; rather, the court, acting within its proper discretion, considered the defendant's undisputed risk of developing future health problems in concluding that a substantial change in circumstances had occurred on the basis of the defendant's health.

B

The plaintiff also cursorily claims that the court, in granting the 2014 motion to modify, as amended, failed to consider the entirety of the parties' financial circumstances. We disagree.

In the 2014 motion to modify, as amended, the defendant alleged that there had been a downturn in his financial circumstances. With respect to that claim, the court found as follows. In 2017, the defendant's gross monthly income was $6636, his net monthly income was $5716, and his monthly expenses were $14,900. In 2016, his gross income was $465,000, which largely was comprised of delayed payments he received for prior work he had performed. Earlier in its memorandum of decision, the court had found that, in 2012, the defendant's gross monthly income was approximately $90,000, his net monthly income was approximately $60,000, and his monthly expenses were $66,000. In addition, the defendant's dental practice relies on referrals from other physicians. In the past, the defendant averaged between twenty to twenty-five referrals per month, whereas the defendant averaged between two to three referrals per month at the time of the proceedings on remand. The court concluded that the defendant's reduction in income since 2012 and increased expenses, along with his significant health issues, constituted a substantial change in circumstances. As set forth earlier in this opinion, with respect to the plaintiff, the court found, inter alia, that she had been unemployed since 2008 and had been living with her parents since January, 2017.

We reiterate that, at the outset of its memorandum of decision, the court stated that it had considered all of the evidence presented, it had taken judicial notice of the entire court file, and it had found the defendant's testimony credible. Upon our review of the record before us, we conclude that the court properly considered the parties' respective financial circumstances in adjudicating the 2014 motion to modify, as amended.

III

Finally, we address the plaintiff's claim that, in granting the defendant's 2012 motion to modify and the defendant's 2014 motion to modify, as amended, the

court erroneously modified the defendant's alimony obligations retroactively. Specifically, the plaintiff asserts that (1) the court improperly prohibited her from offering testimony relevant to the court's decision regarding whether to modify alimony retroactively, and (2) the defendant, by having been found in contempt for violating the unallocated order, had unclean hands and, thus, was not entitled to retroactive modification of alimony. We are not persuaded.

Pursuant to § 46b-86 (a), "[n]o order for periodic payment of permanent alimony or support may be subject to retroactive modification, except that the court may order modification with respect to any period during which there is a pending motion for modification of an alimony or support order from the date of service of notice of such pending motion upon the opposing party pursuant to section 52-50." "Although there is no bright line test for determining the date of retroactivity of child support [or alimony] payments, this court has set forth factors that may be considered. Specifically, in *Hane* [v. *Hane*, 158 Conn. App. 167, 176, 118 A.3d 685 (2015)], we expressly noted that a retroactive award may take into account the long time period between the date of filing a motion to modify, or . . . the contractual retroactive date, and the date that motion is heard . . . . The court may examine the changes in the parties' incomes and needs during the time the motion is pending to fashion an equitable award based on those changes." (Internal quotation marks omitted.) *LeSueur* v. *LeSueur*, 172 Conn. App. 767, 780, 162 A.3d 32 (2017).

During the proceedings on remand, the plaintiff argued that, in the event that the court granted the defendant's motions seeking to modify alimony, the defendant was not entitled to retroactive modification of alimony. The plaintiff asserted that the defendant was appearing before the court with unclean hands stemming from his failure to comply with the unallocated order, which resulted in a finding of contempt against him, which this court affirmed. The plaintiff contended that the defendant's "self-help" measures had caused her harm, as she was dependent on the payments made by the defendant pursuant to the unallocated order. Accordingly, the plaintiff argued, it was inequitable to award the defendant retroactive modification of his alimony obligations.

In its memorandum of decision, the court stated in relevant part: "The plaintiff argues that the defendant's self-help measures should not be ignored because [they] caused her harm. Specifically, the defendant left the plaintiff with no income to cover her expenses, and, consequently, she was forced to live off her savings, which are now significantly depleted. The plaintiff is seeking to maintain the order of $20,000 per month from May, 2011 through October, 2017, minus payments

made and adjusted by the unbundling of the unallocated order. The defendant argues that the plaintiff never returned to work and is in good health. The plaintiff is eligible to receive social security benefits, though at a reduced rate if taken now rather than waiting until she is eligible to receive full benefits. The defendant reminds the court that these motions were filed five and six years ago, and that the lack of financial relief has caused the defendant to overpay the plaintiff, as he believes he was entitled to a modification." The court proceeded to grant the defendant's 2012 motion to modify and 2014 motion to modify, as amended, and to enter modified alimony orders that were applied retroactively.

A

We first turn to the plaintiff's claim that the court erred in prohibiting her from offering testimony that was relevant to the court's determination regarding whether to modify the defendant's alimony obligations retroactively. This claim is unavailing.

"[T]he trial court has broad discretion in ruling on the admissibility [and relevancy] of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . Additionally, before a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . The harmless error standard in a civil case is whether the improper ruling would likely affect the result." (Internal quotation marks omitted.) *Porter* v. *Thrane*, 98 Conn. App. 336, 342–43, 908 A.2d 1137 (2006).

During the hearings held on remand, the plaintiff's counsel called the plaintiff to testify. During direct examination, the plaintiff's counsel asked the plaintiff to explain how the defendant's noncompliance with the unallocated order had "affect[ed]" her. The defendant's counsel objected, arguing that the plaintiff's counsel improperly was attempting to introduce evidence of the consequential damages of the defendant's contemptuous conduct, which was not germane to the motions before the court. In response, the plaintiff's counsel asserted that the alleged harm suffered by the plaintiff as a result of the defendant's cessation of payments pursuant to the unallocated order was critical for the court to consider in determining whether to modify alimony retroactively. Following a lengthy argument, the court sustained the objection. Notwithstanding the court's ruling, the plaintiff, absent objection, proceeded to testify that, since May, 2011, she had no sources of income or support other than the defendant's payments under the unallocated order and that, once the defendant had stopped remitting those payments, she was forced to deplete her savings to satisfy her various financial liabilities.

The plaintiff asserts that the court, by sustaining the objection of the defendant's counsel to the question directed to her concerning the effect of the defendant's contemptuous conduct, improperly denied her the opportunity to testify about the consequences of the defendant's contemptuous conduct and that such testimony would have provided the court with a stronger foundation upon which to deny the defendant retroactive modification of his alimony obligations. Assuming, without deciding, that the court abused its discretion by sustaining the objection, the plaintiff has failed to demonstrate that the alleged error was harmful. Although the court initially sustained the objection raised by the defendant's counsel, the plaintiff subsequently offered testimony, absent objection, regarding the consequences of the defendant's conduct. In addition, in its memorandum of decision, the court expressly considered the plaintiff's argument that the defendant's conduct had harmed her. Thus, we reject the plaintiff's claim.

B

We next turn to the plaintiff's claim that the court erred in modifying the defendant's alimony obligations retroactively because the defendant had unclean hands as a result of his violation of the unallocated order, for which he was found in contempt. She asserts that, in light of the substantial damages that she suffered as a result of the defendant's contemptuous conduct, it was inequitable for the court to modify alimony retroactively while awarding her only $4680 in attorney's fees in relation to the 2012 motion for contempt.[12] We disagree.

In its memorandum of decision, after setting forth the plaintiff's argument in opposition to the retroactive modification of alimony, the court acknowledged the defendant's arguments raised in support of modifying alimony retroactively, namely, that the plaintiff was in good health yet unemployed, the plaintiff was eligible to receive reduced social security benefits, the motions to modify were several years old, and, on the basis of his belief that he was entitled to a modification of the unallocated order, the defendant had overpaid the plaintiff. The plaintiff cites to no appellate authority, and we are aware of none, to support her contention that the finding of contempt against the defendant *required* the court to deny the retroactive modification of alimony. We conclude that the court did not abuse its discretion in modifying alimony retroactively under the circumstances of this case.[13]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] For ease of discussion, we address the plaintiff's claims in a different order than they are set forth in her appellate brief.

[2] "The agreement stated in relevant part: '3.1 During the lifetime of the [defendant] and until the death, remarriage or cohabitation of the [plaintiff], whichever event shall first occur, the [defendant] shall pay to the [plaintiff]

as alimony, or separate maintenance for the support of the minor children the sum of $20,000 per month.' " *Malpeso* v. *Malpeso*, 165 Conn. App. 151, 155 n.3, 138 A.3d 1069 (2016).

[3] "In its entirety, the clause provided: '3.2 The amount and term of alimony shall be modifiable only under the following circumstances:

" '(a) Upon a court of competent jurisdiction's determination that the [defendant] has become disabled as defined by the Social Security Administration or in the event that the economy of New York undergoes a substantial change as a result of a catastrophic event (such as 9/11).

" '(b) After July 1, 2012, upon a court of competent jurisdiction's determination that there has been a substantial change of circumstances as provided for in Connecticut General Statute[s] § 46b-84a.

" '(c) The parties contemplate that the [plaintiff] may obtain full or part-time employment either before or after entry of a decree of dissolution. Such employment shall not be deemed a substantial change in circumstances during the first eight years of the alimony term.

" '(d) Only under the circumstances set forth in this paragraph 3.3 shall the [defendant's] obligation to pay alimony pursuant to paragraph 3.1 be modifiable during the first eight years.'

"Paragraph 3.3 provided: 'The parties shall endeavor to negotiate child support if alimony terminates while any child or children are minors. If they are unable to agree, the amount of child support to be paid by the [defendant] shall be determined by a court of competent jurisdiction. Child support payments shall be retroactive to the last day on which alimony was paid.' " *Malpeso* v. *Malpeso*, 165 Conn. App. 151, 155 n.4, 138 A.3d 1069 (2016).

[4] Paragraph 10.2 of the agreement provided: "The [defendant] shall be responsible for payment of the costs of undergraduate college and/or vocational educational expenses for the three minor children. For purposes of this subparagraph, said undergraduate college educational expenses shall include, room, board, books, tuition, fees and a reasonable travel allowance to [and] from home. Said expenses shall also include college application fees and costs, the costs of SAT preparation courses and the costs of required pre-college tests."

[5] A comprehensive recitation of Judge Schofield's decisions, which is not necessary to repeat in this opinion, is set forth in *Malpeso* v. *Malpeso*, supra, 165 Conn. App. 157–63.

[6] "The scope of that hearing is limited. As discussed, when the alimony order is determined from the [unallocated order], the court will need to consider the financial resources of the defendant. This necessarily implicates considering the impact of the college expenses on his ability to pay any new alimony award. . . . This evaluation, however, does not require the court to revisit the college expense order and modify it. Moreover, the limited scope of the hearing, in this case, does not require a court to reconsider long settled property distribution amongst the parties." (Citation omitted.) *Malpeso* v. *Malpeso*, supra, 165 Conn. App. 174 n.22.

[7] The plaintiff raises two additional claims with respect to the 2012 motion to modify that require minimal discussion. First, the plaintiff asserts that, by granting the 2012 motion to modify and reducing her alimony award on the basis of the defendant's payment of the children's college expenses, the court in effect modified the educational support provision of the agreement and made the plaintiff liable for the college expenses. We find no merit in the plaintiff's constrained interpretation of the court's decision.

Second, the plaintiff contends that the defendant, rather than seeking modification of alimony, should have sought modification of the educational support order pursuant to General Statutes § 46b-56c (h) on the basis of his payment of the college expenses. We disagree. Pursuant to the agreement, the defendant was entitled to seek modification of alimony after July 1, 2012, predicated on a substantial change in circumstances. The plaintiff cites to no appellate authority, and we are aware of none, supporting her proposition that the defendant was obligated to seek modification of the educational support order, rather than alimony, on the ground that the college expenses were substantial.

[8] General Statutes (Rev. to 2011) § 46b-86 (a) provides in relevant part: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support, an order for alimony or support pendente lite or an order requiring either party to maintain life insurance for the other party or a minor child of the parties may, at any time thereafter, be continued, set aside, altered or modified by the court upon a showing of a substantial change in the circumstances of either party . . . ."

[9] The plaintiff also claims that, if the defendant's payment of the college expenses warranted a downward modification of alimony, then the court should have increased the plaintiff's alimony award once the defendant had satisfied his obligation to pay the college expenses. The court did not base its decision granting the 2012 motion to modify and reducing the plaintiff's alimony award on the magnitude of the children's college expenses alone; rather, the court also determined that the significant increase in the defendant's expenses and liabilities since the time of dissolution constituted a substantial change in circumstances warranting modification of alimony. Thus, the plaintiff's claim fails.

[10] "Cellulitis is a bacterial skin infection that occurs in the subcutaneous tissue or the dermis, which results in inflammation." *Mulcahy* v. *Hartell*, 140 Conn. App. 444, 446 n.2, 59 A.3d 313 (2013); see also Stedman's Medical Dictionary (27th Ed. 2000) p. 317 (defining cellulitis as "[i]nflammation of subcutaneous, loose connective tissue").

[11] A pulmonary embolism is a blood clot in the lung. *O'Connor* v. *Med-Center Home Health Care, Inc.*, 140 Conn. App. 542, 545 n.3, 59 A.3d 385, cert. denied, 308 Conn. 942, 66 A.3d 884 (2013).

[12] The plaintiff does not claim that the amount of attorney's fees awarded to her in relation to the 2012 motion for contempt was erroneous. We construe her claim on appeal to challenge only the retroactivity of the modified alimony orders entered in relation to the defendant's 2012 motion to modify and the defendant's 2014 motion to modify, as amended.

[13] The plaintiff also appears to challenge the court's determination that the recalculated alimony arrearage totaled $628,000. Specifically, the plaintiff asserts that the court erroneously found that a $100,000 payment made by the defendant to her in November, 2011, brought the defendant current with respect to the arrearage owed at that time, arguing that she testified during the proceedings on remand that, following the $100,000 payment, there remained a $20,000 arrearage for which the court failed to account. We disagree. In its memorandum of decision, the court found that in November, 2011, the defendant paid the plaintiff $100,000, bringing him current with respect to the arrearage he owed through *September*, 2011. During the proceedings on remand, the plaintiff testified that, prior to the $100,000 payment, there was a $120,000 arrearage as of *October*, 2011. Thus, there is no conflict between the plaintiff's testimony and the court's finding.

---