******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# JENNIFER LENCZEWSKI *v.* VINCENT LENCZEWSKI
## (AC 46649)

Alvord, Westbrook and Bear, Js.

*Syllabus*

The defendant appealed from the trial court's denial of his postdissolution motions for modification of alimony and for contempt and from its granting of the plaintiff's motion for contempt. He claimed, inter alia, that the court improperly denied his motion for a reduction of his alimony obligation. *Held*:

The trial court did not abuse its discretion in denying the defendant's motion for modification of alimony.

This court declined to review the defendant's claims on appeal regarding the trial court's denial of his motion for modification that did not relate to the bases advanced in his motion to modify, that were not argued in his posttrial brief, and that the trial court appropriately did not address in adjudicating his motion, as those appellate claims were not properly before this court.

This court declined to review the defendant's claim that the court improperly denied his motion for contempt seeking enforcement of a provision in an arbitration award ordering the plaintiff to contribute to the postsecondary education expenses of the parties' minor son, as the claimed error was induced by the defendant's contrary position, which the court adopted, that it lacked authority to enter remedial orders with respect to noncompliance with the arbitration award on the basis that the award was not an order of the court.

The trial court did not abuse its discretion in finding the defendant in contempt, as the defendant's claim that a prior ruling precluded the court from finding him in contempt was conclusory and inadequately briefed, and his request for reconsideration of the judgment of contempt in light of his health and financial condition failed to challenge the basis for the finding of contempt.

The trial court did not abuse its discretion in awarding the plaintiff attorney's fees in connection with her motion for contempt, as the court was authorized to do so pursuant to statute (§ 46b-87), as well as in accordance with the parties' separation agreement.

Argued October 9—officially released December 24, 2024

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Waterbury, where the court, *Hon. Barbara J.*

*Quinn*, judge trial referee, rendered judgment dissolving the marriage and granting certain other relief in accordance with the parties' separation agreement; thereafter, the court, *Parkinson, J.*, granted the plaintiff's motion for contempt, denied the defendant's motions for contempt and modification of alimony, and rendered judgment thereon, from which the defendant appealed to this court. *Affirmed.*

*Richard C. H. Marquette*, for the appellant (defendant).

*Tara C. Dugo*, for the appellee (plaintiff).

*Opinion*

ALVORD, J. In this postjudgment dissolution matter, the defendant, Vincent Lenczewski, appeals from the judgment of the trial court resolving several motions filed by the defendant and the plaintiff, Jennifer Lenczewski. Specifically, the defendant claims on appeal that the court (1) abused its discretion in denying his motion for a reduction in his alimony obligation, (2) improperly denied his motion for contempt with respect to the plaintiff's claimed failure to comply with a provision of an arbitration award, (3) improperly found him in contempt, and (4) abused its discretion in awarding attorney's fees to the plaintiff. We affirm the judgment of the court.

The following facts and procedural history are relevant to our resolution of the claims on appeal. The court, *Hon. Barbara J. Quinn*, judge trial referee, dissolved the parties' marriage on August 4, 2015. The parties have four children. At the time of the dissolution, the parties' oldest child, Alexandra, was an adult. The parties' second child, Kevin, anticipated attending college, and the two youngest children, Matthew and Avery, were minors. The judgment of dissolution incorporated by reference the parties' separation agreement

dated August 4, 2015 (separation agreement). The separation agreement provided for the postsecondary educational support of Kevin and stated that the court would retain jurisdiction with respect to the postsecondary educational support of Matthew and Avery. With respect to alimony, the parties agreed that the defendant would pay the plaintiff $6000 every two weeks and 30 percent of any gross bonus received by him, terminating upon the death of either party, the plaintiff's remarriage, or August 20, 2031. The separation agreement required the parties to furnish each other with copies of their federal income tax returns on an annual basis within seven days of filing.

Following motions for contempt filed by both parties, on September 20, 2018, the court, *Ficeto, J.*, directed the parties to pursue binding arbitration.[1] The arbitrator issued an award dated April 8, 2020, and a corrected award on June 10, 2020 (collectively, arbitration award). Relevant to this appeal, the arbitration award contained an order that the terms set forth in the separation agreement with respect to the educational expenses of Kevin would apply to Matthew. Although both parties believed that they were bound by the terms of the arbitration award, neither party filed an application for an order confirming the award. See General Statutes § 52-417.[2]

[1] Article VII of the separation agreement, titled Art, Collectibles and Other Personal Property, contains a provision obligating the parties to participate in binding arbitration if they were unable to resolve disputes under this section. The parties have not raised any claim on appeal relating to the scope of the arbitration provisions of the settlement agreement.

[2] General Statutes § 52-417 provides: "At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the [S]uperior [C]ourt for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, to any judge thereof, for an order confirming the award. The court or judge shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419."

The April 8, 2020 arbitration award and the June 10, 2020 correction were placed in the court file.

Approximately one year after the issuance of the arbitration award, the parties each filed several motions. On May 17, 2021, the plaintiff filed four motions for contempt, one of which is at issue in this appeal. That motion alleged that the defendant had failed to provide copies of his tax returns in violation of the separation agreement. The plaintiff requested, among other relief, that the court order the defendant to pay the plaintiff's attorney's fees. On May 20, 2021, the defendant filed a motion for contempt, in which he alleged, inter alia, that the plaintiff had failed to pay money toward Matthew's educational expenses. On May 24, 2022, the defendant filed an amended motion for contempt. The parties also filed competing motions for modification of alimony.

The court, *Parkinson, J.*, held a hearing on the parties' motions over several days in November, 2022, and February, 2023. Both parties testified, and the court received documentary evidence. The parties also submitted posttrial memoranda.

On May 30, 2023, the court issued a memorandum of decision. The court found the defendant in contempt with respect to his failure to provide the plaintiff with copies of his tax returns within seven days of filing, as required by the separation agreement. The court ordered the defendant to pay attorney's fees in the amount of $5550 for the preparation and prosecution of the plaintiff's contempt motion. The court denied the defendant's motion for contempt with respect to the plaintiff's failure to pay for Matthew's educational expenses. The court also denied both parties' motions for modification of alimony. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant's first claim on appeal is that the court abused its discretion in denying his motion for a reduction in his alimony obligation. In support of his claim,

the defendant argues that the plaintiff has experienced a decrease in her overall cost of living and liabilities, she no longer has financial responsibilities related to the children's extracurricular activities or medical expenses, her work qualifications and earning capacity have increased, and the defendant has experienced "substantial and negative changes to his health status" requiring that he reduce the number of hours he works. The plaintiff responds that the defendant's claim is unreviewable because the grounds argued on appeal were not alleged in his motion to modify. We agree with the plaintiff.

The following additional procedural history is relevant to this claim. Paragraph 14.3 of the parties' separation agreement provides: "At any time on or after September 25, 2022, the [defendant] shall have the right to petition the court for a reduction in the amount of alimony based upon one or more of the following factors: 1. The gross income of the parties from his/her employment, with the [plaintiff's] safe harbor and the non-inclusion of on call income of the [defendant] pursuant to this Article. 2. The reasonable expenses of the parties; and/or 3. Whether any or all of the children are no longer eligible for educational support or are receiving educational support pursuant to [General Statutes] § 46b-56c, as amended.

"This provision shall not interfere with or preclude the right of either party to otherwise file a motion to modify alimony pursuant to [General Statutes] § 46b-86 . . . at any time."

On October 21, 2022, the defendant filed a motion for modification seeking a reduction in his alimony obligation. In his motion, he alleged that his expenses had increased substantially; he was working extraordinary hours to meet his expenses; Kevin was no longer eligible for educational support; Matthew continued to

be eligible for educational support, which the plaintiff had failed to pay; and a motion was pending for an order seeking educational support for Avery. In his posttrial memorandum of law filed April 6, 2023, the defendant reiterated the grounds alleged in his motion for modification and requested that the court reduce his alimony obligation from $6000 biweekly to $5000 biweekly.

In the court's memorandum of decision, it made factual findings with respect to both parties' motions for modification. With respect to the defendant, the court found that he "has colon cancer, which resulted in the removal of a significant portion of his colon and life-threatening complications including extensive blood clotting throughout his internal organs. [The defendant] was unable to work for several months in 2018. As recently as 2022, [the defendant] had internal bleeding in his esophagus and stomach. His condition is incurable. He will be taking medication for the rest of his life. Despite these health conditions, [the defendant] presently works up to eighty-four hours per week as an anesthesiologist." The defendant's income increased from $444,808 at the time of the parties' divorce to $863,227 in 2022, and his current expenses total $11,266 weekly, including the alimony payment of $3000 weekly. The defendant's expenses include financial support to the parties' adult son, Kevin; credit card debt; and monthly payments for three out of the four vehicles he owns, including a Maserati, Mercedes-Benz, Porsche, and BMW. He contributes $2400 biweekly to his retirement plans, the value of which totaled $576,324 in February, 2023.

With respect to the plaintiff, the court found that she has a bachelor's degree in business and a master's degree in early education. She was not working at the time of the parties' divorce and also was not working at the time of the hearing. The plaintiff worked for approximately two months, earning $18 per hour, at a

sports and physical therapy office in 2021. She moved to Illinois in 2021, because she was displaced from her lease and for a lower cost of living. She paid $2075 monthly for rent in Connecticut and now pays $1100 monthly in Illinois. The plaintiff's weekly expenses have decreased since the time of the divorce from $2509 to $2018. After paying her expenses, the court stated that the plaintiff is left with a weekly surplus of $596.

The court also made factual findings with respect to the plaintiff's health. "[The plaintiff] was diagnosed with ulcerative colitis when she was in her twenties. The symptoms, which have increased since divorce, include uncontrollable bowels, which can be triggered by stress. [The plaintiff] also suffers from diabetes, which was diagnosed in 2016, for which she was prescribed insulin and other medication. Some of the symptoms include blurry or double vision. [The plaintiff] also has a sixth nerve palsy in her eye, diagnosed in 2017, which is a degenerative disorder that causes weakness in the eye, hypertension, and debilitating anxiety and depression, which hinder her ability to function. [The plaintiff] has not applied for any employment recently. [The plaintiff] has many skills as evidenced by her resume. . . . [G]iven her extensive health concerns and little work experience, [however] it is highly unlikely that [the plaintiff] will ever work again."

The court then separately addressed each party's motion for modification. After denying the plaintiff's motion for modification, the court turned to the defendant's motion. It first rejected the defendant's argument that his alimony obligation should be reduced on the basis that he works an extraordinary number of hours and his expenses have increased. The court noted that the defendant had cited no authority for these reasons as a basis for a reduction in alimony. The court acknowledged the defendant's increase in hours as a healthcare

provider during the COVID-19 pandemic and commended him for working lengthy hours, especially in light of his health concerns. The court, however, found that his income had increased, not decreased, since the imposition of the alimony award. The court acknowledged the significant expenses related to educational support for the parties' children but noted that the obligation belongs to both parties. With respect to the defendant's increased expenses in the form of voluntary provision of financial support to Kevin, voluntary contributions to the defendant's retirement accounts, and maintenance of four motor vehicles, the court found that such expenses did not form a basis for the reduction of his alimony obligation. Accordingly, the court denied the defendant's motion for modification.

We first set forth our standard of review and applicable legal principles. "[W]e will not disturb the trial court's ruling on a motion for modification of alimony or child support unless the court has abused its discretion or reasonably could not conclude as it did, on the basis of the facts presented." (Internal quotation marks omitted.) *Mountain* v. *Mountain*, 189 Conn. App. 228, 233, 206 A.3d 802 (2019). "In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous." (Citation omitted; internal quotation marks omitted.) *Birkhold* v. *Birkhold*, 343 Conn. 786, 808–809, 276 A.3d 414 (2022).

As noted previously, the defendant argues that the plaintiff has experienced a decrease in her overall cost of living and liabilities, she no longer has financial responsibilities related to the children's extracurricular activities or medical expenses, her work qualifications and earning capacity have increased, and the defendant

has experienced "substantial and negative changes to his health status" requiring that he reduce the number of hours he works. Although there was evidence presented and the court did make factual findings related to certain of the circumstances that the defendant claims on appeal should have justified a downward modification, the court did so in connection with its denial of the plaintiff's upward motion for modification, not the defendant's motion.[3] Because the defendant did not allege those factual circumstances in his motion for modification and did not argue those circumstances in the portion of his posttrial brief addressed to his motion for an alimony modification, the court appropriately did not address those circumstances in adjudicating his motion.

Practice Book § 25-26 (e) provides in relevant part that "[e]ach motion for modification shall state the specific factual and legal basis for the claimed modification

---

[3] We observe that the defendant's counsel, during the hearing, expressly stated that he sought to raise the health of the defendant in connection with the plaintiff's motion for modification, not the defendant's motion. The following colloquy occurred:

"The Court: Okay. And don't you on behalf of the [defendant], have a motion for reduction of alimony?

"[The Defendant's Counsel]: Yes, Your Honor. The reason for that is that there is a different section, under the—

"The Court: Oh, so that's not related to the health.

"[The Defendant's Counsel]: There's a different section, Your Honor, that relates to, in the divorce agreement on alimony, there's a right to file a motion for reduction on or after September 25, 2022.

"The Court: So, that's like automatic.

"[The Plaintiff's Counsel]: Right, it's unrelated to health, Your Honor."

In connection with the plaintiff's motion, the court found that, although the defendant's increase in salary constitutes a substantial change in circumstances, no modification was warranted because no " 'exceptional circumstances' " existed. The court found that the plaintiff had experienced a serious decline in her health, which would affect her ability to work in the future, but that no evidence was presented that her health issues would affect her financially, given that she also was not employed at the time of the divorce. The court also found that the plaintiff's expenses had decreased. Accordingly, the court denied the plaintiff's motion for an upward modification of the defendant's alimony obligation.

. . . ." Moreover, "[i]t is fundamental in our law that the right of a [party] to recover is limited to the allegations in his [pleading]. . . . Facts found but not averred cannot be made the basis for a recovery. . . . Thus, it is clear that [t]he court is not permitted to decide issues outside of those raised in the pleadings." (Internal quotation marks omitted.) *Breiter* v. *Breiter*, 80 Conn. App. 332, 335, 835 A.2d 111 (2003).

This court previously has declined to address a claim that the court erred in rejecting a claim of a substantial change in circumstances where the party's motion for modification did not allege the factual circumstances that formed the basis for the party's claim on appeal. See *Mountain* v. *Mountain*, supra, 189 Conn. App. 233–34 (declining to address claim that court erred in rejecting plaintiff's claim of substantial change in circumstances based on decrease in income and increase in parenting time where motion to modify did not allege those bases); see also *Westfall* v. *Westfall*, 46 Conn. App. 182, 186, 698 A.2d 927 (1997) (court improperly modified order requiring defendant to maintain $100,000 life insurance policy because, although evidence was admitted in support of plaintiff's motion for contempt regarding defendant's failure to provide life insurance, neither party was aware that such evidence would be basis for modification of amount of life insurance).

Because the claims raised by the defendant on appeal do not relate to the bases he advanced in his motion to modify, and the court properly did not address them in ruling on his motion, they are not properly before us now.[4]

---

[4] We note that the defendant is not precluded from filing a motion for modification on the basis of the deterioration in his health. See *Malpeso* v. *Malpeso*, 189 Conn. App. 486, 505–506, 207 A.3d 1085 (2019) (court did not abuse its discretion in finding that substantial change in circumstances occurred on basis of defendant's health after considering undisputed risk of developing future health problems).

With respect to the claims the court did address—the extraordinary hours worked by the defendant and his claimed increase in expenses—the defendant does not contend that any of the court's factual findings are clearly erroneous. Nor has he presented any basis to persuade us that the court could not reasonably conclude as it did. Accordingly, the court did not abuse its discretion in denying the defendant's motion for modification of his alimony obligation.

## II

The defendant's second claim on appeal is that the court improperly denied his motion for contempt seeking enforcement of the arbitration award provision ordering the plaintiff to contribute to Matthew's post-secondary educational expenses. Specifically, he requests that this court reverse the trial court decision and "enforce only that sole and specific provision" of the arbitration award. (Emphasis omitted.) The plaintiff responds that any error was induced by the defendant, in that his position before the trial court was that the arbitration award was not an order of the court and could not form a basis for a finding of contempt or remedial orders. We agree with the plaintiff that any claimed error was induced by the defendant and, thus, his claim on appeal is unreviewable.

The following additional procedural history is relevant to this claim. In paragraph 5.6 of the parties' separation agreement, the parties agreed that "[t]he [plaintiff] shall pay 37.5% and the [defendant] 62.5% of the parties' son, Kevin's tuition, room and board and books for each of the four years of undergraduate college in an amount not to exceed [said costs at the] University of Connecticut at Storrs for a full time in-state student at the time Kevin matriculates. Said obligation of the parties shall cease when Kevin attains the age of 23 years. Said obligations may be modified in accordance with . . .

General Statutes § 46b-56c. The court shall retain juris-
diction with respect to all post majority support obliga-
tions of the parties for their minor children, Matthew
and Avery, which shall be subject to the provisions of
. . . § 46b-56c.''

The arbitration award addressed postsecondary edu-
cational support orders and provided that the terms set
forth in the separation agreement as relating to Kevin
would apply to Matthew.[5]

In the defendant's May 24, 2022 amended motion for
contempt, he alleged that the plaintiff had failed to
pay her share, as set forth in the arbitration award, of
Matthew's educational expenses, that the defendant
had made the payments for her, and sought reimburse-
ment of the amounts he paid. He requested that the
court find the plaintiff in contempt and order the plain-
tiff to pay, within twenty-one days, the amount of the
educational support obligation, which he had calculated
to be $38,946.05. In the event that the plaintiff did not
make such payment, the defendant requested that he
be permitted to offset the amount against his alimony
obligation.

On November 18, 2022, the court, *Parkinson, J.*,
issued an order to the parties to brief certain issues,
including whether the arbitration award became an
order of the court, and, if not, what authority the plain-
tiff relies on for the terms of the arbitration award to
form the basis of a motion for contempt.[6] In the plain-
tiff's January 10, 2023 memorandum of law, she argued
that, although the arbitration award was not confirmed

---

[5] The arbitration award stated that the plaintiff's share of Matthew's educa-
tional expenses was $9527.25 for the 2018-2019 academic year and $5652
for the fall, 2019 semester.

[6] The plaintiff claimed contemptuous conduct on the part of the defendant
related to the life insurance and personal property provisions of the arbitra-
tion award, in addition to the plaintiff's motion for contempt pertinent to
this opinion. See part III of this opinion.

by the court and thus did not constitute an order of the court that could support a finding of contempt, the court had the authority to issue remedial orders with respect to the binding and enforceable arbitration award. In the defendant's response, filed January 31, 2023, he agreed with the plaintiff that the arbitration award could not support a finding of contempt, but disagreed with the plaintiff's position that the court had the authority to issue remedial orders based on a party's noncompliance with the arbitration award. Specifically, he argued that, "[w]hile the court has broad discretion to enter remedial orders, a pre-requisite for such an order still necessitates a finding that a party failed to comply with an existing order of the court." Accordingly, he argued that the court lacked authority "to enter remedial orders related to any alleged noncompliance" with the arbitration award.

In the defendant's updated proposed orders filed on April 6, 2023, he argued: "[T]he arbitration decisions . . . are not orders of the court and are not final, binding or enforceable by the court. Therefore, no orders of contempt or otherwise should be ordered by the court in favor of or against either party in this postjudgment matter with respect to the pending motions based upon said decisions of the arbitrator."[7]

In its memorandum of decision, the court denied the defendant's motion for contempt with respect to educational support for Matthew. The court adopted the defendant's position at trial with respect to the

---

[7] In his proposed orders filed on April 6, 2023, the defendant proposed that the court order the plaintiff to "reimburse the [defendant] the amount of $38,946.05 within thirty (30) days after the entry of the court order, in accordance with the educational support order given to eldest son Kevin pursuant to paragraph 5.6 of the separation agreement. . . . If payment is made by the [plaintiff] to the [defendant] of the amount set forth above in full within the time frame set forth then there shall be no order of contempt of court against the [plaintiff]."

arbitration award, determining that the court lacked authority to enter remedial orders with respect to noncompliance with the arbitration award, on the basis that it was not an order of the court and "noncompliance with the arbitration decision cannot be contempt of court."[8]

The following legal principles are applicable. "[T]he term induced error, or invited error, has been defined as [a]n error that a party cannot complain of on appeal because the party, through conduct, encouraged or prompted the trial court to make the [allegedly] erroneous ruling. . . . It is well established that a party who induces an error cannot be heard to later complain about that error. . . . This principle bars appellate review of induced nonconstitutional error and induced constitutional error. . . . The invited error doctrine rests [on principles] of fairness, both to the trial court and to the opposing party. . . . [W]hether we call it induced error, encouraged error, waiver, or abandonment, the result—that the . . . claim is unreviewable—is the same." (Internal quotation marks omitted.) *Ciarleglio* v. *Martin*, 228 Conn. App. 241, 263 n.16, 325 A.3d 219 (2024).

We are persuaded that the doctrine of induced error is implicated in this case, in that the defendant took

---

[8] With respect to its authority to enforce the dissolution judgment provision related to postsecondary educational support orders, the court noted that the defendant had not filed a motion seeking a postsecondary educational support order for Matthew. Additionally, the court found that "it was undisputed at the hearing that the [plaintiff] was . . . denied access to Matthew's academic records and the parent portal where she could obtain pertinent information." Thus, the court found noncompliance with § 46b-56c (f), which requires that in order to qualify for payments due under an educational support order, the child must "make available all academic records to both parents during the term of the order. . . ." Finally, the court found that it lacked authority to order payment for a fifth year of Matthew's college and that, to the extent the defendant sought an order for retroactive postsecondary educational support, such an order was not permissible. On appeal, the defendant does not raise any claims with respect to these findings of the court.

one legal position at trial and now takes a contradictory position on appeal. "[O]rdinarily appellate review is not available to a party who follows one strategic path at trial and another on appeal, when the original strategy does not produce the desired result. . . . To allow the [party] to seek reversal now that his trial strategy has failed would amount to allowing him to induce potentially harmful error, and then ambush the [opposing party and the court] with that claim on appeal." (Internal quotation marks omitted.) *Nweeia* v. *Nweeia*, 142 Conn. App. 613, 620, 64 A.3d 1251 (2013). To permit the defendant to challenge the trial court's determination that it lacked authority to enter remedial orders with respect to noncompliance with the arbitration award after the defendant requested in posttrial briefing and proposed orders that the court so conclude "would amount to sanctioning a trial by ambuscade, which we will not do." *Buxenbaum* v. *Jones*, 189 Conn. App. 790, 811, 209 A.3d 664 (2019). We therefore decline to review the defendant's claim.

## III

The defendant's next claim on appeal purports to challenge the court's judgment finding him in contempt. We reject his challenge.

The following additional procedural history is relevant. On May 17, 2021, the plaintiff filed a motion for contempt alleging that the defendant had failed to provide her with copies of his tax returns in violation of the provision of the separation agreement requiring each party to "furnish the other with a copy of his and her Federal Income Tax return on an annual basis within seven days of the filing of the same." In her posttrial brief, the plaintiff argued that the defendant's failure to provide his tax returns "was designed to deprive her the ability to seek an increase in alimony . . . ." The plaintiff argued that "[t]he defendant's

secreting of his income information is particularly egregious considering the extent his income has increased postdivorce," from $444,808 at the time of the divorce to $863,228 in 2022.

In its memorandum of decision, the court found the defendant in contempt for failing to provide the plaintiff with his tax returns within seven days of filing. The court first found that the order to exchange tax returns was contained in the separation agreement, which was incorporated into the dissolution judgment. The court found the provisions of the order clear and unambiguous. The court found that the defendant "admitted during the hearing that he understood this provision of the order and offered no excuse as to why he failed to comply other than alleging with no proof that [the plaintiff] is guilty of the same. Though such allegations of 'tit for tat' were raised during the hearing, [the defendant's] counsel offers no legal authority for why [the defendant] should not be found in contempt of court for failing to abide by the court's order."[9] On appeal, the defendant does not claim that the court erred in concluding that

---

[9] During the hearing, the following colloquy occurred between the plaintiff's counsel and the defendant:

"Q. For any year since the date of divorce, you have not provided [the plaintiff] with a copy of your tax returns within seven days of filing, isn't that true?

"A. Up until 2018, [the plaintiff] and I did not exchange tax returns at all with each other, correct. . . .

"Q. Are you stating that in 2019, you provided [the plaintiff] with tax returns within seven days of your filing of same? Is that your testimony?

"A. I don't recall the date, but I did furnish . . . her the 2019 tax returns.

"Q. But you don't recall if it was within the seven days, is that correct?

"A. I don't recall the date. . . .

"Q. So, it's fair to say that you have not followed the court orders, as written in the agreement that you just read, since the date of divorce, isn't that correct?

"A. That's correct.

"Q. Okay. Do you believe you have an obligation to follow these court orders right now?

"A. Correct. I do."

the order to exchange tax returns was clear and unambiguous, and he does not brief sufficiently a claim that the court abused its discretion in determining that his failure to comply with the order was wilful.[10] See *Birkhold* v. *Birkhold*, supra, 343 Conn. 811 ("It is the burden of the party seeking an order of contempt to prove, by clear and convincing evidence, both a clear and unambiguous directive to the alleged contemnor and the alleged contemnor's wilful noncompliance with that directive. . . . The question of whether the underlying order is clear and unambiguous is a legal inquiry subject to de novo review. . . . We review the trial court's determination that the violation was wilful under the abuse of discretion standard." (Citations omitted; internal quotation marks omitted.)). Instead, the defendant raises only two brief arguments in support of his request that this court "reconsider the trial court's judgment of contempt . . . ." First, he contends that, because Judge Ficeto did not award legal fees or find him in contempt, that "there was no reason for [Judge] Parkinson to retry this case, as it was already determined." Second, he requests this court to reconsider the judgment of contempt in light of "the totality of the circumstances regarding his precarious position including, but not limited to, his deteriorative health condition and financial restrictions with regards to alimony."

These contentions warrant little discussion. With respect to the defendant's conclusory assertion that an unidentified prior ruling by Judge Ficeto precluded the court in the present proceedings from finding him in

---

[10] In one sentence of his brief, the defendant asserts that "[i]t was not the purpose of [the] defendant to infringe upon, and violate, a lawful order of the trial court." "We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *C. B.* v. *S. B.*, 211 Conn. App. 628, 630, 273 A.3d 271 (2022).

contempt, the defendant provides no statements of the facts, citations to the record, or citation to relevant legal authority. Accordingly, the defendant's brief is inadequate for us to conduct any meaningful review of this assertion. See *C. B.* v. *S. B.*, 211 Conn. App. 628, 631, 273 A.3d 271 (2022). With respect to his request that we reconsider the judgment of contempt in light of his health and financial condition, he does not argue that such conditions prevented him from complying with the provision of the separation agreement but, rather, argues that "to impress upon him additional fees would thrust upon him a serious financial burden which is, to a great degree, the subject of this appeal." Because this argument, in essence, challenges the court's award of attorney's fees; see part IV of this opinion; rather than the finding of contempt, it does not present a basis for reversal of the judgment of contempt. Accordingly, we conclude that the court did not abuse its discretion in finding the defendant in contempt.

## IV

The defendant's final claim on appeal is that the court abused its discretion in awarding the plaintiff attorney's fees in connection with her motion for contempt. We are not persuaded.

The following additional procedural history is relevant to this claim. In the plaintiff's motion for contempt with respect to the defendant's noncompliance with the separation agreement provision requiring that the parties exchange their tax returns, the plaintiff sought, in addition to other requested relief, her counsel fees in relation to the preparation and prosecution of the motion for contempt. As authority for the award of attorney's fees, the plaintiff relied on both General Statutes § 46b-87[11] and paragraph 18.2 of the separation

---

[11] General Statutes § 46b-87 provides in relevant part: "When any person is found in contempt of an order of the Superior Court . . . the court may award to the petitioner a reasonable attorney's fee . . . such sums to be paid by the person found in contempt . . . ."

agreement, which provides that "[e]ach party agrees to indemnify the prevailing party for all expenses, costs and attorneys' fees resulting from or made necessary by the bringing of any suit or other proceeding to enforce the carrying out by the other of any of the terms, covenants, and/or conditions of this Agreement, or to enforce any of the rights or to recover under any of the provisions of this Agreement. The amount of said attorney's fees shall be as determined by the court." In the plaintiff's posttrial briefing, she requested that the court, in addition to finding the defendant in contempt, order the defendant to pay the plaintiff counsel fees in the amount of $5500 for the preparation and prosecution of her contempt motion. In its memorandum of decision, the court granted the plaintiff's motion for contempt and ordered the defendant to pay "counsel fees in the amount of $5550 for the preparation and prosecution of the contempt motion, in accordance with paragraph 18.2 of the dissolution judgment." In his appellate brief, the defendant incorrectly refers to the standard related to an award of attorney's fees under General Statutes § 46b-62 and premises his argument on that improper standard. "Although the award of attorney's fees pursuant to § 46b-62 is appropriate when a complaining party has brought an unsuccessful contempt action, where contempt is established, the concomitant award of attorney's fees properly is awarded pursuant to § 46b-87 and is restricted to efforts related to the contempt action. . . . Unlike § 46b-62, § 46b-87 does not contain any requirement that the award of attorney's fees is to be determined with reference to the relative financial positions of the parties." (Citation omitted; internal quotation marks omitted.) *Esposito* v. *Esposito*, 71 Conn. App. 744, 749, 804 A.2d 846 (2002).

"The award of attorney's fees in contempt proceedings is within the discretion of the court. . . . In making its determination, the court is allowed to rely on

its familiarity with the complexity of the legal issues involved. Indeed, it is expected that the court will bring its experience and legal expertise to the determination of the reasonableness of attorney's fees. . . . [T]he award of attorney's fees pursuant to § 46b-87 is punitive, rather than compensatory . . . ."[12] (Internal quotation marks omitted.) *Allen* v. *Allen*, 134 Conn. App. 486, 503, 39 A.3d 1190 (2012); see also *L. W.* v. *M. W.*, 208 Conn. App. 497, 512, 266 A.3d 189 (2021) ("[b]ecause an award of attorney's fees in a contempt proceeding is punitive, not compensatory, knowledge of the prevailing party's exact legal expenses is not required for the trial court to properly determine the amount of an award").

In the present case, the court was statutorily authorized to award attorney's fees pursuant to § 46b-87, which provides that a trial court may exercise its discretion to award attorney's fees to the prevailing party in a contempt proceeding. Additionally, the court stated that its award was made in accordance with paragraph 18.2 of the separation agreement. The defendant has advanced no arguments from which we can conclude that the court abused its discretion in awarding attorney's fees.

The judgment is affirmed.

In this opinion the other judges concurred.

_____

[12] Without citation to any authority, the defendant asserts in passing that he was entitled to an evidentiary hearing on the issue of attorney's fees. We disagree that the court abused its discretion in awarding fees without holding an evidentiary hearing. See *Esposito* v. *Esposito*, supra, 71 Conn. App. 748 (court did not abuse its discretion in awarding attorney's fees in connection with contempt proceeding in absence of evidentiary hearing, where court was familiar with counsel's preparation and presentation of case).